UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

ALLEN BROWN,

                          Plaintiff,

                                                          15 CV 4488 (KAM)(RER)

              -against-

THE CITY OF NEW YORK,
Police Officer JEFFREY SMITH, Shield No. 5466,
Sergeant JERRY GARCIA, Shield No. 2320, Police
Officer ANTHONY BIONDOLILLO, Shield No. 4033, and
Police Officer JAY RICHIEZ, Shield No. 4293,

                          Defendants.

------------------------------------------------------------------------


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS PURSUANT TO FED. R. CIV. P. 37

LAW OFFICES OF JOEL B. RUDIN, P.C.
By: Terri S. Rosenblatt
    Joel B. Rudin
    Haran Tae
600 Fifth Avenue, Tenth Floor
New York, New York 10020
(212) 752-7600
E-mail: trosenblatt@rudinlaw.com


AMY RAMEAU, ESQ.
16 Court Street, Suite 2504
Brooklyn, New York 11241
(718) 887-5536
rameaulawny@gmail.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................i

RELEVANT FACTUAL BACKGROUND.............................................................. 2

    A.    The Allegations in this Case ................................................... 2

    B.    The Hospital IAB Interview.................................................... 3

    C.    History of the Litigation and Discovery ................................. 3

           1.    Pleadings and Document Discovery ......................... 3

           2.    Requests for the IAB Discovery and Any Hospital Interview Recording........................................................................ 4

           3.    Depositions ................................................. 6

    D.    The Belated Disclosure of the Tape ........................................ 9

    E.    The Current Posture of the Case ........................................ 12

ARGUMENT ...................................................................................... 12

DEFENDANTS VIOLATED THEIR DISCOVERY OBLIGATIONS BY SANDBAGGING PLAINTIFF WITH THE HOSPITAL AUDIO RECORDING AFTER DEPOSITIONS AND DISCOVERY CLOSED; THE RESULTING PREJUDICE ONLY CAN BE CURED BY A SIGNIFICANT REMEDY................................. 12

    A.    The Applicable Law........................................................ 12

    B.    Striking of Defendants' Answer to the Excessive Force Claim is Appropriate Here Because of the All-Encompassing Prejudice ........... 17

    C.    Additionally, Defendants Should Be Precluded From Using Plaintiff's Deposition Testimony For Any Purpose, And From Using the Audio Recording.............................................................. 22

    D.    This Court Should Require Defendants to Pay Plaintiff's Attorney's Fees Incurred In Connection With Defendants' Discovery Violation........... 23

CONCLUSION................................................................................... 24

# TABLE OF AUTHORITIES

**Case**                                                                                   **Page**

*Angermeier v. Cohen*, No. 12-CV-55 KBF, 2015 WL 3766683
(S.D.N.Y. June 17, 2015)……………………………………………… 15, 21

*Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849 (2d Cir. 1995)…………… 14

*Bedasie v. Mr. Z Towing, Inc.*, No. 13 CV 5453, 2016 WL 7839436
(E.D.N.Y. Apr. 29, 2016)……………………………………………… 14

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979)………………………………………… 15

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)……………………… 13

*Eduardo Maldonado Lopez v. Cajmant LLC*, No. 15-CV-593(SLT)(RER),
2016 WL 7017361 (E.D.N.Y. Dec. 1, 2016)…………………………… 14

*Estate of Shaw v. Marcus*, No. 14CIV3849NSRJCM, 2017 WL 825317
(S.D.N.Y. Mar. 1, 2017)……………………………………………….. 14, 15, 21

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)………………… 17, 23

*Graf v. Long Island R. Co.,* No. 04 CV 4945 (NG)(RER),
2006 WL 2620525 (E.D.N.Y. Sept. 13, 2006)………………………… 16, 21

*Hood v. City of N.Y.*, No. 86 CIV 7656 (WCC), 1988 WL 36326
(S.D.N.Y. April 11, 1988)……………………………………………… 12

*In re Tartaglione*, No. 06 CIV.13560 (WCC), 2008 WL 336844
(S.D.N.Y. Feb. 5, 2008)……………………………………………… 16-17

*Lopez v. City of New York*, No. 11-CV-2607 CBA RER, 2012 WL 2250713
(E.D.N.Y. June 15, 2012)……………………………………………… 14

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
427 U.S. 639 (1976)…………………………………………………… 15

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2010
WL 3173785 (E.D.N.Y. Aug. 11, 2010)……………………………… 14

**Case**                                                                 **Page**

*Sec.& Exch. Comm'n v. CKB168 Holdings Ltd.*, No. 13-CV-558,
    2016 WL 2853527 (E.D.N.Y. May 13, 2016)……………………………  14

*Sieck v. Russo*, 869 F.2d 131 (2d Cir. 1989)…………………………………  17

*Tomlinson v. St. Paul Reinsurance Mgmt. Corp.*, No. 96 CIV. 4760
    (JFK)(MDH), 1997 WL 167051 (S.D.N.Y. Apr. 9, 1997)………………  16, 19, 22

**Statutes and Rules**

Federal Rules of Civil Procedure

    Rule 26(1)(A)(ii)………………………………………………………12

    Rule 34(a)(1)(A)……………………………………………………… 12

    Rule 37(b)(2)(A)………………………………………………………1, 13

    Rule 37(c)(1)(A)………………………………………………………1, 13, 17, 23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

ALLEN BROWN,

                Plaintiff,

                                                       15 CV 4488 (KAM)(RER)

        -against-

THE CITY OF NEW YORK,
Police Officer JEFFREY SMITH, Shield No. 5466,
Sergeant JERRY GARCIA, Shield No. 2320, Police
Officer ANTHONY BIONDOLILLO, Shield No. 4033, and
Police Officer JAY RICHIEZ, Shield No. 4293,

                Defendants.

------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS
## PURSUANT TO FED. R. CIV. P. 37

This is a false arrest and excessive force civil rights action, in which a tape-recorded

interview of Plaintiff Allen Brown made by the NYPD's Internal Affairs Bureau (IAB) on the

night of the incident was withheld by the Defendants until after the close of discovery. This

memorandum of law respectfully is submitted in support of Plaintiff's motion for discovery

sanctions, pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (c)(1), for this inexcusably-belated

disclosure. The lateness of the disclosure has caused litigation-upending prejudice to Plaintiff by

impacting his deposition as well as those of the Defendant-police officers. Because of the

pervasiveness of the prejudice, the most appropriate remedy is the striking of Defendants'

answer to Plaintiff's excessive force claim, together with an order that prevents Defendants from

using Plaintiff's deposition and the audio recording for impeachment purposes at trial, and the awarding of reasonable costs and fees.

## RELEVANT FACTUAL BACKGROUND

### A. The Allegations in this Case

Plaintiff Allen Brown, then a 21-year-old college student from New Jersey, was in the backseat of a car that was pulled over by the police in the Flatbush section of Brooklyn, New York, on June 27, 2014. *See* Rosenblatt Decl., ¶ 2, Ex. A (citing Plaintiff's deposition transcript); First Amended Complaint ("Compl." ¶ 20). Mr. Brown was in the car at the invitation of a friend, who was the front seat passenger, and did not know the driver. *See* Rosenblatt Decl., ¶ 2, Ex. A. The driver, for unknown reasons, sped off in the middle of the traffic stop with Mr. Brown still in the car. *See* Compl. ¶ 19. When the driver finally stopped the car several blocks away, the driver and the other passenger ran out of the car. *Id.* Mr. Brown also fled. *Id.* at ¶ 20.

After running a short distance, Mr. Brown hid in a dark stairwell outside of 266 Martense Street. *See* Rosenblatt Decl., ¶ 2, Ex. A. Defendants Garcia, Smith, Richiez and Biondolillo, along with other NYPD officers, found Mr. Brown and hiding in a small vestibule area from where there was no avenue of escape. *See* Compl. ¶ 22.

In the process of arresting Mr. Brown, the Defendant officers punched, dragged, and kicked him. Compl. ¶ 22. The Defendants unleashed their attack on Mr. Brown even though he was totally cooperative and did not resist arrest. Compl. ¶¶ 22, 29. The beating was so severe that Mr. Brown needed hospital treatment. Compl. ¶ 23.

Before Mr. Brown was treated for his injuries at the hospital, which included a laceration to his scalp that required staples to close, he was interviewed by members of the IAB. Rosenblatt Decl., ¶ 2, Ex. A; Ex. C.

## B. The Hospital IAB Interview

Mr. Brown had been at the hospital for approximately two and one half hours, but was not yet treated, when he was approached by two IAB investigators, Detectives Christophe and Meehan. *See* Rosenblatt Decl., ¶ 2, Ex. B (hospital records showing arrival time); Ex. C (written summary). When the detectives approached Mr. Brown, he was shackled in his hospital gurney, in a semi-private area of the emergency room. *See* Rosenblatt Decl., ¶ 2, Ex. C (including pictures taken by IAB). The detectives questioned Mr. Brown about the events that led to his hospitalization. At the end of the interview, Mr. Brown was not provided with any written record or recording of his statements.

After the interview, Mr. Brown finally was treated and released from the hospital. *See* Rosenblatt Decl., ¶ 2, Ex. B. Police officers transported him to Brooklyn Criminal Court, where he was charged with trespass, resisting arrest and related offenses. *See* Compl., ¶ 26, 30. On or about February 3, 2015, all of the charges were dismissed pursuant to an agreement with the prosecution to adjourn the case in contemplation of dismissal. *See* Compl. ¶ 31.

## C. History of the Litigation and Discovery

### 1. <u>Pleadings and Document Discovery</u>

Mr. Brown filed the instant lawsuit on June 31, 2015. In it, he alleged State and federal civil rights claims, including false arrest and excessive force. *See* Docket Entry ("DE"), # 1. On November 4, 2015, Defendants filed their answer. *See* DE #13. In Defendants' answer, they denied Plaintiff's allegations and raised thirteen affirmative defenses. *Id.* Defendants'

affirmative defenses include that Plaintiff's "own culpable or negligent conduct" contributed to his alleged injuries, that Defendants were engaged in "the reasonable exercise of proper and lawful" discretionary actions, and that "Plaintiff provoked any incident that occurred." *Id.* [1]

On November 16 and 17, 2015, the parties exchanged Rule 26(a) disclosures. In Defendants' disclosure, they did *not* identify or disclose *any* statements of Mr. Brown made to IAB– including audio tapes—as "documents" or "tangible things … that defendants may use to support their claims and defenses." *See* Rosenblatt Decl., ¶ 2, Ex. E.

On November 17, 2015, Plaintiff served on Defendants a Rule 34 discovery demand. In it, he requested "all written or recorded statements, taken by defendants …. or someone acting on defendants' behalf, relating to Plaintiff's arrest…. [.]" *See* Rosenblatt Decl., ¶ 2, Ex. F. He also requested the "complete IAB" files for all IAB investigations concerning the individual Defendants. *Id.*

Defendants responded to Plaintiff's discovery demand on January 27, 2016. However, they did not provide most of the material related to the IAB investigation and did not provide any tape recording. Thus, on May 4, 2016, Plaintiff's counsel wrote to defense counsel again asking for the IAB detectives' "notes and any recording of the interview" from Plaintiff's hospital interview on June 27, 2014. *See* Rosenblatt Decl., ¶ 2, Ex. G.

## 2. Requests for the IAB Discovery and Any Hospital Interview Recording

Throughout the summer of 2016, Plaintiff's counsel made even more requests for the IAB records related to the investigation of Plaintiff's arrest, and specifically for any audio recordings. *See* Rosenblatt Decl., ¶ 2, Ex. H-K.

---

[1] The parties amended their complaint and answer on December 31, 2015, and March 30, 2016, respectively. The amendments added specific named defendants, but did not change the substance of the allegations. Defendants raised the same affirmative defenses in their amended answer.

On July 19, 2016, Plaintiff's counsel wrote, "[W]hy the delay in producing our client's statements to IAB? ... It's very prejudicial to our client's interests." *See* Rosenblatt Decl., ¶ 2, Ex. H. In that same correspondence, Plaintiff's counsel pointed out that the delay in producing those materials was delaying Plaintiff's deposition.

On July 20 and 21, 2016, Plaintiff's counsel again reminded defense counsel that he had not produced any "recording" of any interview with Mr. Brown. *See* Rosenblatt Decl., ¶ 2, Ex. I. During this exchange, defense counsel himself acknowledged that IAB routinely audio tapes witness interviews as a matter of course. *Id.* But no tape was disclosed.

Still *again* on August 2, 2016, Plaintiff's counsel asked when the complete materials related to IAB's investigation of Plaintiff's arrest would be disclosed. That same day, defense counsel said there would be no further disclosure on this issue, emphatically stating: "Everything concerning <u>this</u> IAB investigation has been produced, save [then-disputed, unrelated notes]" (emphasis in original). *See* Rosenblatt Decl., ¶ 2, Ex. J.

By the end of the summer of 2016, Defendants had provided some IAB documents, but no tape recording of the hospital interview. They also refused to disclose handwritten notes made by an IAB investigator during a second interview of Plaintiff, conducted at Plaintiff's counsel's office (counsel would not permit IAB to tape record this interview).

On August 31, 2016, Plaintiff requested the Court order disclosure of written notes of the second interview "and a tape of the first interview." *See* DE #32. Plaintiff's counsel raised his "concern[] about being sandbagged." *Id.* He explained, *"My client should not have to submit to a deposition without the opportunity to review all his statements"* (emphasis added). *Id.* This Court agreed with Plaintiff, in a ruling on September 9, 2016, that Defendants had to turn over

the IAB notes. The parties separately agreed that Defendants would make a diligent search for any audio recording of Plaintiff's IAB hospital interview. *See* Rosenblatt Decl., ¶ 2, Ex. K.

Defendants made their final production of IAB notes on September 9, 2016. At that point, the only record that Plaintiff had of his IAB hospital interview was a short, type-written summary prepared by Detectives Meehan and Christophe.

The written summary, attached as Ex. C to the Rosenblatt Declaration, contained the following relevant information, attributed to Mr. Brown:

- When Mr. Brown was coming out, with his hands above his head, one of the cops beat him up by punching and kicking him and by "bash[ing]" his head on the concrete floor, "causing a laceration";

- "At some point [Mr. Brown] either blacked out or lost consciousness. When he woke up he was in the back of an RMP bleeding";

- Mr. Brown "slipped" when he was coming up the stairs;

- The most aggressive officer had "short blond hair; [was] wearing a grey army shirt, had a tattoo of an angel on his right forearm and [was] wearing black and blue Nike sneakers," which had blood on them;

- Mr. Brown described the officer who initially pulled his shirt and dragged him as "M/W, 29-32 y/o, short blond hair with glasses also wearing a gray t-shirt , jeans and yellow sneakers"; and

- Mr. Brown tentatively identified a photograph of Garcia looking like one of the officers at the scene.

### 3. Depositions

By the fall of 2016, Defendants still had not produced any hospital interview tape, and continued to represent that no such tape existed. Relying on this representation, and having received what appeared to be all other IAB documents, Plaintiff appeared for his deposition on November 10, 2016. *See* Rosenblatt Decl., ¶ 2, Ex. A.

The bulk of the deposition focused on what happened outside 266 Martense Street, and which officers did various assaultive acts. Defense counsel closely questioned Mr. Brown about how he received each injury. Mr. Brown named Defendant Garcia as the person who wore the black and blue shoes with blood on them. He was not able to provide the name of any other officer. *See* Rosenblatt Decl., ¶ 2, Ex. A. He also was asked who rode with him in the ambulance, which he did not remember. *Id.* He testified that he could not remember certain details, such as how far the car drove away from the traffic stop, how long he was hiding before the officers attacked him, and what portions of the attack transpired in the stairwell as opposed to the stairs. *See* Rosenblatt Decl., ¶ 2, Ex. A. He testified that he was not sure how many officers were in street clothes versus uniforms. *See* Rosenblatt Decl., ¶ 2, Ex. A.

Defense counsel also closely examined Mr. Brown about the injuries he suffered that night. He was asked *five* different times if he "lost consciousness" during the incident (Mr. Brown said he did not). *See* Rosenblatt Decl., ¶ 2, Ex. A. Also, although Mr. Brown testified overall that the injuries were from the dragging, punching and kicking collectively inflicted by the Defendants, Mr. Brown said that he did not specifically remember how he received the injury to his head that night, nor could he remember how many times he was punched or kicked. *See* Rosenblatt Decl., ¶ 2, Ex. A. His failure to remember the exact number of times he was punched and kicked became a central feature of the deposition, where defense counsel questioned Mr. Brown at least *24 times* about his recollection of the number of blows the officers inflicted. *See* Rosenblatt Decl., ¶ 2, Ex. A.

Mr. Brown also was questioned about the IAB hospital interview. He testified that he did not remember if it was recorded, and that he did not remember the specifics of what the IAB officers asked him. He recalled that he was shown photo arrays, but did not recall how many.

He did not even remember if the IAB officers identified themselves as members of law enforcement, or if they were in street clothes or in uniform. *See* Rosenblatt Decl., ¶ 2, Ex. A.

Plaintiff's counsel also conducted depositions of the Defendants in this case. As part of each deposition, Plaintiff's counsel asked questions aimed at determining which defendant took various individual actions. These questions largely were based on the discovery that was provided (and represented to be complete). Thus, counsel questioned Sgt. Garcia about what he did when he saw Plaintiff on the stairs, but did not question him about his clothing that night. Defendant Biondolillo, meanwhile, was questioned about whether he had a tattoo of an angel, and whether he was aware of any tattoos that any other Defendants had. He was not questioned about the color of his sneakers and whether they had blood on them. Richiez and Smith were not questioned about their sneakers or about any tattoos. *See* Rosenblatt Decl., ¶ 2, Ex. O.

Finally, Plaintiff deposed IAB Detectives Christophe and Meehan on December 21, 2016, and February 7, 2017, respectively. The first IAB witness, Det. Christophe, testified that it was regular IAB practice to tape record interviews, but that he did not specifically recall whether there was such a tape in Mr. Brown's case. *See* Rosenblatt Decl., ¶ 2, Ex. L. Plaintiff's counsel again at this deposition asked for production of the tape. Defense counsel pushed back that the witness "did not testify with certainty that there was a recording," and that he had produced "all the [] audio recordings," but did agree to "make another request." *See* Rosenblatt Decl., ¶ 2, Ex. L. The second IAB witness, however, *did* specifically remember recording Mr. Brown. *See* Rosenblatt Decl., ¶ 2, Ex. M. Following that deposition, on February 13, 2017, Plaintiff's counsel wrote to defense counsel to yet again request the tape. *See* Rosenblatt Decl., ¶ 2, Ex. N.

Discovery closed in this case on March 2, 2017. No audio tape was produced.

**D. The Belated Disclosure of the Tape**

During the final discovery conference in this case, counsel raised the missing tape with the Court. *See* Rosenblatt Decl., ¶ 2, Ex. P, p. 7. Defense counsel admitted that the tape existed and said he was trying to locate it so that it could be disclosed. *Id.* Plaintiff's counsel indicated that, depending on the contents of the tape, Plaintiff would seek a remedy for the delayed disclosure. *Id.*

Defendants disclosed the tape on April 5, 2017. The recording is 29 minutes long. The recording contains a number of never-before-disclosed details.

The recording confirms that Mr. Brown was interviewed after having been at the hospital for three hours, before his head wound was treated. Mr. Brown's voice sounds woozy, so much so that the IAB officers even asked if Mr. Brown, "[are] you with me?". Mr. Brown replied that he was tired. *See* Rosenblatt Decl., ¶ 2, Ex. D, p. 2.

The tape recording exposed the previously-disclosed written interview summary as inaccurate and misleading.[2] Mr. Brown's recorded account of the incident differed in several ways from what the IAB officers wrote down, and contained significant, omitted details.

As to how the assault occurred and what transpired during it:

- Mr. Brown immediately told IAB that the reason he ran from the car was because he was afraid, *see* Rosenblatt Decl., ¶ 2, Ex. D, pp. 2-3;

- The car drove about three blocks from the police before it stopped, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 14.

---

[2] Defendants did not provide a transcript of the recording. Plaintiff's counsel prepared a transcript, which is attached as Exhibit D to the accompanying declaration. Counsel will provide the recording itself to the Court upon request.

- Mr. Brown was not certain that he "passed out" or "lost consciousness," but instead he "doesn't know" if he "maybe" did, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 3;

- He did not wake up in the back of a police car, as reported in the summary, but instead, to the extent he had a lapse in consciousness, he regained it outside of a police car, against the bumper, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 4; and

- Mr. Brown also detailed the incident from the time he was "grabbed up the stairs," through his being walked to the police car throughout the entire 29-minute interview.

As to how Plaintiff's injuries occurred:

- He specifically attributed his "need for staples" to his head to one of the officers punching and kicking him in the head, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 5;

- He told the detectives that he was punched and kicked in the face and back repeatedly, by several officers; the IAB detectives did not ask him "how many" individual blows he suffered, *see* Rosenblatt Decl., ¶ 2, Ex. D, pp. 3-6;

- He described receiving a "huge scratch" from being dragged, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 3;

- He stated that he did not simply "trip," as reported in the summary, but rather, "[The officer] grabbed me up the stairs. I was trying to gain my steps and come in up the stairs, my foot slipped on one of the stairs and I falled[sic], as soon as I fell, as I hit the ground, I was pinned down by feet and arms." *See* Rosenblatt Decl., ¶ 2, Ex. D, p. 4;

- He described having his chin hit into concrete, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 3; and

- He stated that his "tooth chipped" from being bashed into the concrete, *see* Rosenblatt Decl., ¶ 2, Ex. D, p 3.

As to Plaintiff's identification of the police officers involved:

- He did not say that one of the officers definitively had an "angel" tattoo, but instead described the tattoo as "spiritual," and "maybe" having an angel or angels, *see* Rosenblatt Decl., ¶ 2, Ex. D, pp. 5-6;

- He specifically remembered Defendant Richiez's involvement with his processing and transportation to the hospital, *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 7;

- Instead of definitively "blond," one officer was described as "brunette-blondish" and the other was only hesitantly described as blond, *see* Rosenblatt Decl., ¶ 2, Ex. D, pp. 6, 7; and

- Plaintiff identified a photograph of Defendant Garcia, describing him as the officer with the "grey and yellow sneakers," *see* Rosenblatt Decl., ¶ 2, Ex. D, p. 14.

At the end of the IAB interview, the officers asked Mr. Brown to sign a HIPAA release, which he declined to do. Mr. Brown asked the officers if he could go home. The IAB officers said he could not, but would first have to see a judge, and after thus increasing his anxiety, immediately offered him a form to withdraw his IAB complaint. Mr. Brown declined to sign the form. *See* Rosenblatt Decl., ¶ 2, Ex. D, p. 16.

In a pre-motion letter to the District Court judge, defense counsel stated that the reason for the delayed disclosure was that the audiotape was not in the IAB investigative file, but

instead was stored at the IAB Command Office. Defense counsel acknowledged, however, that he found it after his own witness, Sgt. Meehan, testified that the recording existed at his February 7, 2017, deposition. Defense counsel did not explain why he did not inquire of his readily-available witness before this time. DE # 42.

### E. The Current Posture of the Case

With discovery now closed, Defendants have proposed a motion for summary judgment. They argued in their pre-motion letter that they intend to move for summary judgment as to Plaintiff's excessive force claim because, among other things, Plaintiff could not explain during his deposition how he received the injury to his head. DE #39.

## ARGUMENT

**DEFENDANTS VIOLATED THEIR DISCOVERY OBLIGATIONS BY SANDBAGGING PLAINTIFF WITH THE HOSPITAL AUDIO RECORDING AFTER DEPOSITIONS AND DISCOVERY CLOSED; THE RESULTING PREJUDICE ONLY CAN BE CURED BY A SIGNIFICANT REMEDY**

### A. The Applicable Law

It is standard practice in every federal litigation that parties voluntarily exchange, at the outset, "documents ... [and] tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(1)(A)(ii). A party also must disclose, upon demand, relevant "documents," "electronically stored information," and "sound recordings" in its possession, custody or control. Fed. R. Civ. P. 34(a)(1)(A). Upon such a request, a party is required to make a "diligent" search to locate responsive materials. *See, e.g., Hood v. City of N.Y.*, No. 86 CIV 7656 (WCC), 1988 WL 36326, at *1 (S.D.N.Y. Apr. 11, 1988) (Connor, D.J.).

Where a party does not meet these obligations, the Court has "wide discretion to impose sanctions, including severe sanctions." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Such sanctions are authorized where a party "fails to obey an order to provide...discovery" or "fails to provide information ... as required by Rule 26(a)." *See, respectively*, Fed. R. Civ. P. 37(b)(2)(A) and 37(c)(1).

Rule 37 sets forth the range of appropriate sanctions. Where a party fails to disclose material pursuant to Rule 26(a), "the party is not allowed to use that information ...to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court also may, "in addition to or instead of this sanction" for a Rule 26 violation, impose the more severe sanctions listed in Rule 37(b)(2)(A). Those sanctions include orders:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

This range of sanctions is available not only when there is a complete failure to disclose, but also when disclosure is inexcusably late. *See Bedasie v. Mr. Z Towing, Inc.*, No. 13 CV 5453, 2016 WL 7839436, at *3 (E.D.N.Y. Apr. 29, 2016) (Pollak, M.J.) (precluding evidence). Indeed, Rule 37 "is designed to prevent the 'sandbagging' of an opposing party with new evidence." *Sec. & Exch. Comm'n v. CKB168 Holdings Ltd.,* No. 13-CV-558, 2016 WL 2853527, at *3 (E.D.N.Y. May 13, 2016) (Mauskopf, D.J.) (internal citations omitted). *See also Lopez v. City of New York*, No. 11-CV-2607 CBA RER, 2012 WL 2250713, at *1 (E.D.N.Y. June 15, 2012) (Reyes, M.J.) ("The combined purpose of [] Rules [26 and 37] is to avoid surprise or trial by ambush."). The later the disclosure, and the more significant the undisclosed material, the greater the sanction that should be imposed. *See, e.g., Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) (Mann, M.J.) ("dismissal, preclusion or the imposition of an adverse inference" may be appropriate where "the requesting party suffered prejudice as a result of the loss or withholding of evidence.").

Numerous factors guide a Court in exercising its discretion to fashion an appropriate remedy, including: "(i) the willfulness of the non-compliant party or the reason for the noncompliance; (ii) the efficacy of lesser sanctions; (iii) the duration of the period of noncompliance; and (iv) whether the non-compliant party had been warned of the consequences of his non-compliance." *Estate of Shaw v. Marcus*, No. 14CIV3849NSRJCM, 2017 WL 825317, at *4 (S.D.N.Y. Mar. 1, 2017) (McCarthy, M.J.), *citing See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995). *See also Eduardo Maldonado Lopez v. Cajmant LLC*, No. 15-CV-593(SLT)(RER), 2016 WL 7017361, at *2 (E.D.N.Y. Dec. 1, 2016) (Reyes, M.J.) (listing factors).

In determining "willfulness," courts may consider counsel's intentional violation of discovery orders, or counsel's "gross negligence." *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[W]here gross professional negligence has been found that is, where counsel clearly should have understood his duty to the court the full range of sanctions may be marshalled.").

"In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (i) obtaining compliance with discovery orders; (ii) ensuring the disobedient party does not benefit from non-compliance; and (iii) providing a general deterrent in the particular case and litigation in general." *Estate of Shaw, supra, citing, inter alia, National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

The severe remedy of striking pleadings is appropriate where these considerations are met, and no lesser remedy is available to cure the resulting prejudice. *See Angermeier v. Cohen*, No. 12-CV-55 KBF, 2015 WL 3766683, at *1 (S.D.N.Y. June 17, 2015), *aff'd sub nom. Bhagwanani v. Brown*, 665 F. App'x 41 (2d Cir. 2016) (internal quotations omitted). In *Angermeier*, the District Court dismissed plaintiffs' civil RICO action based on the failure to provide certain document discovery that the Court deemed essential to the case. In that case, the defendants requested certain documents early in the litigation that would have allowed them to "test" the allegations in the complaint. *Id.* at *3. Plaintiffs refused to provide the documents and ultimately were ordered by the magistrate to turn them over. Plaintiffs stated that they could not locate such documents where the documents clearly should have been stored among plaintiffs' business records. *Id.* at *5-6. The court noted that it previously warned plaintiffs, who were individuals lacking in "significant resources," that it would dismiss their complaint unless they complied with their discovery obligations. *Id.* at *10. But after failing to comply a full year

after the request was made, and several warnings issued, the court ultimately dismissed the action, finding the delay "lengthy," "willful and in bad faith," and "highly prejudicial." *Id.*

Similarly, in *Graf v. Long Island R. Co.,* No. 04 CV 4945 (NG)(RER), 2006 WL 2620525, at *3 (E.D.N.Y. Sept. 13, 2006) (Reyes, M.J.), this Court struck the plaintiff's pleading where he refused to attend an independent medical examination, despite having been ordered to do so by the Court. This Court reasoned that the "severe" sanction of dismissal was appropriate because, "[n]ot only has defendant suffered the costs of litigation, but without the IME defendant cannot reasonably prepare for trial and counter plaintiff's claim that he was seriously injured, or at the very least assess the extent of plaintiff's injuries." *Id.* (also noting plaintiff's "willfulness" in repeatedly failing to appear).

Lesser sanctions may be appropriate only if they are sufficient to cure the prejudice and deter future misconduct. An example lies in *Tomlinson v. St. Paul Reinsurance Mgmt. Corp.,* No. 96 CIV. 4760 (JFK)(MDH), 1997 WL 167051, at *2 (S.D.N.Y. Apr. 9, 1997), where the court barred plaintiff from using portions of a witness's deposition in which the witness was questioned about documents that (like here) had been withheld from production in discovery. The Court declined to impose "dispositive" sanctions because it found the prejudice was "narrow" and could be cured by excising from use at trial "the portions of the [] deposition in which counsel questioned the witness about the documents." *Id.* Such a remedy prevented plaintiff from "profit[ing] from his own attorney's misconduct." *Id.*

Although these examples are instructive, Rule 37 discovery remedies are necessarily unique to each case and must be fashioned to meet the specific violation in the specific litigation. *See, e.g., In re Tartaglione*, No. 06 CIV.13560 (WCC), 2008 WL 336844, at *6 (S.D.N.Y. Feb.

5, 2008), *citing Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989). It is left to the District Court "to determine which sanction from among the available range is appropriate." *Id.*

Finally, in addition to its statutory authority to impose substantive remedies pursuant to Rule 37, this Court also possesses "inherent authority" to impose other sanctions, such as attorney's fees and costs related to the discovery violation and resulting litigation. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). *See also* Fed. R. Civ. P. 37(c)(1)(A). Such sanctions should be compensatory in nature and are appropriate when a discovery violation has generated needless and burdensome costs to the opposing party. *Id.*

### B. Striking of Defendants' Answer to the Excessive Force Claim is Appropriate Here Because of the All-Encompassing Prejudice

Defendants' inexcusable withholding of a crucial tape recording, which was in their control since the beginning of this case, warrants the severe sanction of partially striking the Defendants' answer and affirmative defenses as they relate to Plaintiff's excessive force claim. (This is not a litigation-ending sanction, as the false arrest claim would remain.[3]) No item of discovery is more significant to this excessive force case than the contemporaneous, recorded interview of Plaintiff, made *immediately* after the incident. Plaintiff's counsel repeatedly requested disclosure of all recordings, including tapes, of Plaintiff's interview so Plaintiff would have it to refresh his recollection and so he would not be sandbagged with it after his deposition. Defense counsel repeatedly reassured Plaintiff that no such recording existed, and took Plaintiff's deposition without providing it. The substance of Plaintiff's deposition clearly was affected. Indeed, the only accounting of the interview with which Plaintiff was provided to

---

[3] Plaintiff is not moving to strike Defendants' entire pleading because the individual Defendants have admitted their involvement in the arrest and the legal issue of whether the officers had an objective basis to arrest Mr. Brown for trespass is unaffected by his own testimony. However, for the reasons set forth in part C, *infra*, Defendants should not be permitted to use Mr. Brown's deposition to impeach his credibility because that could impact the jury's view of liability and damages for the entire case.

refresh his recollection, a written summary, was incomplete, inaccurate, and misleading. As we discuss below, Plaintiff's depositions of the Defendants also were prejudicially affected. Under the applicable factors, the severe remedy of partially striking the Defendants' answer is warranted.

First, as to the "willfulness" or "reason" for non-compliance, Defendants do not, because they cannot, provide a satisfactory answer for their sandbagging of Plaintiff at the close of discovery. IAB's regular practice of recording interviews is well-known, especially so to defense counsel here, a long-time Assistant Corporation Counsel who has likely handled dozens of excessive force cases. Even if counsel were inexperienced, Plaintiff's counsel here *repeatedly* requested this tape and *repeatedly* expressed disbelief at the proposition that it did not exist. Ultimately, defense counsel found the tape by taking an action at the end of the litigation which could easily have been taken on Day One: asking his witness-client if it existed. Defense counsel, particularly as a representative of the City of New York, cannot be excused for conduct that is, at best, grossly negligent. On this factor alone, a strong sanction should be imposed.

Second, there is no "lesser sanction" that could effectively cure the violation. Although the late discovery most dramatically affected the fairness of Plaintiff's deposition, it also impacted the entire litigation. The tape recording, along with the contemporaneous photographs taken of the blood-stained arrest location and of Mr. Brown, is one of the most important pieces of evidence in this case. It is a 29-minute long recording of Mr. Brown's account of the events, given *just a few hours* after they occurred. The short, inaccurate written summary is no substitute for it. Disclosing this tape after Mr. Brown's deposition is the *definition* of prejudicial sandbagging that no lesser measure can cure.

Plaintiff was unfairly and irreparably prejudiced by being subjected to a deposition without first having this recording. Plaintiff was deposed more than two years after the incident occurred. Defense counsel asked him five different questions about the "loss of consciousness" referred to in the IAB report, presumably trying to establish an inconsistency with the statement reported in the IAB summary. Such confusion may not have occurred had Plaintiff had access to his recorded statement from the very night.

Additionally, when Mr. Brown was closely questioned about the role played by each Defendant, Mr. Brown seemed to conflate the actions of Defendant Garcia, who, according to the tape wore grey and yellow sneakers, with a different Defendant, who was described on the tape as wearing black and blue sneakers. The very reason that a party is entitled to his prior statements before being deposed is that human memory is imperfect; the value of being refreshed with prior statements is immeasurable. *See Tomlinson, supra* (withholding documents "deprived defendant's attorney of the ability to prepare his witness[]"). Mr. Brown is now facing a trial where he can be impeached with deposition answers that were obtained through Defendants' withholding of material *essential for his preparation.*

Most significantly, defense counsel questioned Plaintiff about how his head injury was caused. Plaintiff's answer at his deposition, that he did not know precisely how it happened, is now one basis of Defendants' proposed summary judgment motion. But if Plaintiff had properly been provided with the tape recording before his deposition, he could have refreshed his recollection with his own powerful words that the reason he needed staples was from being "punch[ed] and kick[ed] to [his] head," and from "lots of blows to the head." *See* Rosenblatt Decl., ¶ 2, Ex. D, pp.3, 6.

While Plaintiff points to these specific instances where having the recording may have helped, the larger issue is that there may be even more details about the night of the incident that Plaintiff would have remembered if the recording had been disclosed prior to his deposition. What he said and recalled during the interview might have triggered his memory in a way that cannot be reconstructed now, especially after the additional lapse in time and the distorting impact of the misleading written statement and the deposition interrogation.

The prejudice Plaintiff suffered at his deposition cannot be cured. A re-opening of the deposition would be emotionally taxing and cruel to a young man who sought counseling in connection with this incident, and who has been waiting two years for his trial. *See* Rosenblatt Decl., ¶ 2, Ex. A. It also would not prevent Defendants from impeaching Plaintiff with his prior testimony, procured through Defendants' inexcusable discovery violation.

But Plaintiff's deposition is not the only way his case is prejudiced, leading to the another reason that striking a portion of Defendants' answer is the most appropriate result: the belatedly-disclosed interview tape contains information about the individual Defendants not contained anywhere else, and that would have impacted the depositions of those witnesses as well.

A large part of the discovery in this case involved determining the roles of the individual NYPD officers in the arrest and assault of Mr. Brown. In their depositions, each of the four individual Defendants gave different, self-serving, largely irreconcilable accounts. Plaintiff's counsel could have better confronted their testimony had the taped interview been timely disclosed. The interview contains unique information describing the officers involved and their respective roles that is not contained anywhere else in discovery. This includes Mr. Brown's description of Garcia as wearing yellow sneakers, the different description of another officer's

tattoos, and the specific naming of Richiez as being involved at the end of the arrest, none of which is recorded in the written summary of Mr. Brown's interview.

Any lesser sanction than the partial striking of Defendants' answer would risk compounding the prejudice to Plaintiff. Re-opening each Defendant's deposition would be costly, time consuming and delaying. It also would be an ineffective means to discover any useful or reliable facts: each Defendant officer has already committed to a version of events, some of which may be odds with the tape. It is also unlikely that Plaintiff would receive candid answers when the questions are known in advance and the answers are rehearsed, not spontaneous.

Where the only possible way to remedy a discovery violation is to effectively re-do the litigation, a severe sanction is the only appropriate one. Like *Angermeier*, the discovery violation here prevents Plaintiff from "testing" the defense that the individual officers were not personally involved or responsible and that Plaintiff cannot prove his injuries. As in *Graf, supra*, the failure to disclose this tape during discovery prevented Plaintiff from "reasonably preparing" his litigation. Plaintiff has been irreparably prejudiced.

Additional factors listed in *Estate of Shaw v. Marcus, supra*, also support this remedy. The "duration of the period of noncompliance" here spanned the *entire* litigation. The tape recording should have been disclosed immediately as part of Defendants' Rule 26 disclosures. It at least should have been disclosed in response to Plaintiff's repeated, affirmative discovery requests, made *constantly* throughout this litigation, including before the court, for the recording. Instead, it was withheld until *after discovery closed*. The Defendants also had been effectively "warned of the consequences of non-compliance." Plaintiff specifically raised with defense counsel and the court his concern about being "sandbagged" by late disclosure of Plaintiff's

statements after discovery, including most significantly Plaintiff's own deposition, was completed. The Court accepted this argument in ordering the disclosure of IAB notes. The only reason the tape wasn't part of that order is that Defendants misled counsel by claiming such tape did not exist.

Imposing the sanction of striking part of Defendants' answer with respect to the claim most impacted by the discovery violation also would "ensure the [Defendants] do[] not benefit from non-compliance," by preventing them from arguing against an excessive force claim that they prevented Plaintiff from properly pursuing through discovery. And importantly, it would provide an important "general deterrent" here where the non-compliant party is the City of New York and NYPD officers. Obtaining and disclosing IAB recordings is a regular part of these Defendants' practice in responding to frequently-filed excessive force lawsuits. As the primary defender of these claims, Corporation Counsel attorneys know that obtaining and disclosing IAB recordings is fundamental, and the consequences for not doing so are grave. Imposing this sanction here will send a message to future Corporation Counsel attorneys to be more diligent and forthright in their discovery practice.

### C. Additionally, Defendants Should Be Precluded From Using Plaintiff's Deposition Testimony For Any Purpose, And From Using the Audio Recording

In addition, this Court should prohibit the Defendants from using Plaintiff's deposition and audio recording to impeach him at trial.

Barring impeachment of Plaintiff with his deposition and his audio recording is necessary to prevent Defendants from benefitting from their discovery violation. This remedy would mirror *Tomlinsin, supra*, where the Court barred the non-compliant party from using portions of a deposition taken while certain key documents were withheld. Here, like *Tomlinson*, preventing

the use of the deposition and audio recording would prevent Defendants from "profiting from [their] own attorney's misconduct." *Id.*

Defendants should not be allowed to impeach Plaintiff with omissions or inconsistencies resulting from the wrongful withholding of discovery. Here, it is appropriate to preclude the use of the entire deposition, to the extent it refers to the underlying incident. Since the incident takes up almost all of the deposition testimony, barring use of the entire transcript is an appropriate remedy. Similarly, Defendants should be barred from using the contents of the audio recording to impeach Mr. Brown's credibility. Such a remedy is plainly stated in Rule 37 itself, which provides that any material that should have been disclosed under Rule 26, but was not, cannot be used "to supply evidence on a motion, at a hearing, or at a trial." Fed. R. 37(c)(1)(A).

### D. This Court Should Require Defendants to Pay Plaintiff's Attorney's Fees Incurred In Connection With Defendants' Discovery Violation

As an additional sanction, this Court should order Defendants to pay attorneys' fees and costs related to Plaintiff's counsel's efforts to obtain the recording and the litigation that has occurred because of its late disclosure. *Goodyear Tire & Rubber v. Hager*, 137 S.Ct. 1178, 1186 (2017). Such a sanction would be "compensatory" in nature only and would reimburse "those attorney's fees incurred because of the misconduct at issue" here. *Id.* As in *Goodyear*, there is a direct causal link between Defendants' post-discovery closure disclosure of this critical piece of evidence and the litigation that has resulted from it. These costs "would not have been incurred except for the misconduct," and, therefore, should be reimbursed by the Defendants. *Id.* at 1188.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for discovery sanctions in the form of striking Defendants' answer as it related to the excessive force claim, or imposing another sanction, should be granted, along with any other relief as this Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF JOEL B. RUDIN, P.C.
By: Terri S. Rosenblatt
    Joel B. Rudin
    Haran Tae
600 Fifth Avenue, Tenth Floor
New York, New York 10020
(212) 752-7600
E-mail: trosenblatt@rudinlaw.com

AMY RAMEAU, ESQ.
16 Court Street, Suite 2504
Brooklyn, New York 11241
(718) 887-5536
rameaulawny@gmail.com

*Attorneys for Plaintiffs*

DATED:  New York, New York
        May 30, 2017