15 CV 4488 (KAM)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLEN BROWN,

                         Plaintiff,

-against-

THE CITY OF NEW YORK, Police Officer JEFFREY SMITH, Shield No. 5466, Sergeant JERRY GARCIA, Shield No. 2320, Police Officer ANTHONY BIONDOLILLO, Shield No. 4033, Police Officer JAY RICHIEZ, Shield No. 4293, Sergeant CHRISTOPHER MANDERS, Shield No. 2883, Police Officer JOHN DOE 1 through 5, In their individual and official capacities as employees of the City of New York,

                         Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 3-199*
*New York, NY 10007*

*Of Counsel: Karl J. Ashanti, Esq.*
*Tel: (212) 356-2371*
*Matter No. 2015-037987*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIEES ...................................................................................................... ii

FACTUAL HISTORY ................................................................................................................. 3

STANDARD OF REVIEW ......................................................................................................... 8

ARGUMENT

      PLAINTIFF'S MOTION SHOULD BE DENIED FOR FAILURE TO MEET THE REQUISITE LEGAL STANDARD .......................................................................................................... 9

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

City of New York v. Mickalis Pawn Shop, LLC,
    645 F.3d 114 (2d Cir. 2011)......................................................................................................10

Hawley v. Mphasis Corp.,
    302 F.R.D. 37 (S.D.N.Y. July 22, 2014)................................................................................9, 10

National Communs. Ass'n v. AT&T,
    92 Civ. 1735 (LAP), 1998 U.S. Dist. LEXIS 3198 (S.D.N.Y. March 16, 1998) ................9, 10

New York v. Green,
    420 F.3d 99 (2d Cir. 2005)......................................................................................................10

State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004)....................................................................................................10

**Statutes**

Fed. R. Civ. P. 37.................................................................................................................3, 8, 9

Fed. R. Civ. P. 37(b) .................................................................................................................8, 9

Fed. R. Civ. P. 37(b)(2)(A) ...............................................................................................9, 10, 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ALLEN BROWN,

           Plaintiff,   15 CV 4488 (KAM)(RER)

      -against-

THE CITY OF NEW YORK, Police Officer JEFFREY SMITH, Shield No. 5466, Sergeant JERRY GARCIA, Shield No. 2320, Police Officer ANTHONY BIONDOLILLO, Shield No. 4033, Police Officer JAY RICHIEZ, Shield No. 4293, Sergeant CHRISTOPHER MANDERS, Shield No. 2883, Police Officer JOHN DOE 1 through 5, In their individual and official capacities as employees of the City of New York,

           Defendants.

------------------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

    Defendants City of New York, Jeffrey Smith, Jerry Garcia, Anthony Biondolillo and Jay Richiez[1] (collectively "defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in opposition to plaintiff's motion for sanctions in the form of striking defendants' answer, precluding defendants from using plaintiff's deposition testimony and the audio-recording ("June 27, 2014 audio-recording") of plaintiff's June 27, 2014 IAB interview at trial and seeking attorney's fees.

    Plaintiff's motion should be denied in its entirety. The gravamen of plaintiff's application is defendants' failure to produce in a timely fashion a June 27, 2014 audio-recording of plaintiff's interview with Group 9 of the Internal Affair Bureau ("IAB). However, at the heart of this controversy is a simple, innocent truth: the only reason defendants did not produce the

---

[1] Plaintiff has withdrawn all claims against former defendant Christopher Manders by stipulation on March 20, 2017. <u>See</u> Docket Entry Nos. 37 and 38.

June 27, 2014 audio-recording when plaintiff initially requested it is that, at the time, the individuals responsible for responding to plaintiff's request, including the undersigned, were completely unaware that it existed. Thus, rather than being the product of bad faith or gamesmanship, the delay in the production of the audio was solely the result of a clerical oversight that led to the audio initially not being stored where it should have been and consequently going undetected by the diligent searches that were conducted in an effort to locate it.

Plaintiff's motion is a transparent attempt to gain an unwarranted and unfair advantage in this litigation by means that are unrelated to the merits of his claims while simultaneously seeking to enable plaintiff's counsel to obtain financial gain. Specifically, plaintiff requests that the Court strike defendants' answer as it pertains to plaintiff's excessive force claim. That is a request that, if granted, would effectively end the litigation in plaintiff's favor without plaintiff establishing, through credible evidence, the truth of his allegation that the defendant officers used an unreasonable amount of force against him. Plaintiff also requests that defendants be precluded from using either plaintiff's deposition testimony or the audio itself at trial. That is a request that, if granted, would completely insulate plaintiff from cross-examination and result in a wholly one-sided presentation of the facts to a jury. Finally, plaintiff requests that the Court award attorney's fees to his counsel. That is a request that is nothing more than an attempt to provide monetary compensation to plaintiff's counsel as an end-run around offering proof of entitlement to such fees on the merits, as counsel for a prevailing party.

For the reasons set forth below, plaintiff has failed to meet the legal standard for the imposition of these sanctions, and, accordingly, his motion should be denied in its entirety.

## FACTUAL HISTORY

While plaintiff makes various representations concerning the history of this litigation and, in particular, the purported actions and omissions of the defendants and defendants' counsel, the bulk of those representations are baseless, false, and the product of pure speculation concerning matters of which plaintiff has no knowledge.

Plaintiff correctly points out that he did not, in his discovery demands, request defendants to produce all written or recorded statements taken by defendants. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Discovery Sanctions Pursuant to Fed. R. Civ. P. 37 at p. 4) What plaintiff omits, however, is that not only did defendants produce discovery materials in April 2016 which materials included NYPD Internal Affairs Bureau ("IAB") audio-recordings but also that both parties believed at the time that those were the only IAB audio-recordings that existed relevant to the underlying incident.

Specifically, in July 2016, the parties were embroiled in a discovery dispute, not concerning any audio recorded statements of plaintiff but rather concerning handwritten notes made by IAB investigators while interviewing plaintiff about the incident. Initially, there was some confusion as to whether any such handwritten notes existed, as the only interview notes contained in the IAB investigation file appeared to be in the form of a typed IAB worksheet which defendants had already produced in discovery under Bates Nos. NYC366 - NYC369. (Declaration of Karl J. Ashanti ("Ashanti Decl.") dated June 30, 2017, ¶2, Ex. A) That controversy was ultimately resolved when defendants learned that IAB investigators had interviewed plaintiff twice – once by IAB Group 9 on June 27, 2014 and again on September 23, 2014 by IAB Group 54 – and that the lead investigator from Group 54, Sergeant Scott Reiser, did not participate in the first interview but did, for purposes of comparison, use the typed IAB

worksheet from the first interview to superimpose his handwritten notes from the second interview. (Ashanti Decl., ¶3, Ex. B)

On or about July 21, 2016, during the course of the parties' discussions concerning Sergeant Reiser's handwritten notes, plaintiff's counsel, Joel Rudin, memorialized in writing the parties' general understanding at that time that there was no audio-recording of an IAB interview of the plaintiff, stating: "I don't see how there can be an audio recording of plaintiff, but presumably there are of the police witnesses/subjects." (Ashanti Decl., ¶4, Ex. C) This statement is notable for two reasons. First, it demonstrates that even plaintiff's counsel was convinced there was no audio-recorded interview of plaintiff, having presumably previously discussed the issue with his client. Plaintiff was, of course, present during his interview and would have known whether it was being recorded because the IAB investigators made statements at the beginning of the recording indicating who they were and what they were doing and also because the investigators asked plaintiff to state his name and other information for the benefit of the recording. (Declaration of Terri S. Rosenblatt in support of plaintiff's motion for sanctions, dated May 30, 2017 ("Rosenblatt Decl.") ¶ 2, Ex. D)

Counsel's statement is further notable because it demonstrates that by July 21, 2016, defendants had *already* produced what defendants believed were all of the relevant audio-recordings nearly three (3) months earlier – a fact that the undersigned brought to Mr. Rudin's attention in writing by the undersigned on the same date: "We produced the underlying audio-recordings months ago." (Ashanti Decl., ¶5, Ex. D) As proof of the veracity of that statement, and in order to remind Mr. Rudin that (based on what was known at the time) defendants had fulfilled their obligation to produce all audio-recordings, the undersigned attached a copy of the April 29, 2016 cover letter for defendants' production of the IAB audio-recordings. (Ashanti

4

Decl., ¶6, Ex. E) In response, Mr. Rudin replied "I didn't mean to imply that you didn't." which indicated his acknowledgment that defendants had already provided what *both* parties believed at the time were the only IAB audio-recordings that existed relevant to the underlying incident. (Ashanti Decl., ¶7, Ex. F)

It was not until more than one month later, in September 2016, that the parties further discussed the issue of audio-recordings, and, even then, it was an aside to the more central issue of the handwritten notes of the IAB investigators. (Rosenblatt Decl., ¶2, Ex. K) Specifically, in an e-mail dated September 9, 2016, Mr. Rudin wrote: "In addition to the notes the court just addressed in the below order, you have agreed to see if there are notes (**or a tape recording**) by the other detective, who interviewed Mr. Brown on June 27 following his arrest…" (emphasis added). (Rosenblatt Decl. ¶ 2, Ex. K)

Thus, the Court's contemporaneous Order primarily addressed the IAB *notes*, as opposed to audio-recordings, as the notes were the crux of the parties' discovery dispute at the time. (Rosenblatt Decl. ¶2, Ex. K) Nonetheless, in an abundance of caution, defendants conducted additional searches for any audio-recording of the plaintiff within their possession. (Affidavit of Lieutenant James Koschmerl, dated June 29, 2017 ("Koschmerl Aff."), annexed as Ex. G to Ashanti Decl. at ¶ 10) Those additional searches, however, did not bear any fruit until March 2017 when the June 27, 2014 audio-recording was recovered – from a different source than the source that had been previously searched based under NYPD/IAB protocols. (Ashanti Decl., Ex. G, ¶ 11)

According to those protocols, an investigatory section of IAB typically performs a "call out" on the date of an alleged incident. This initial investigation is handled by a Group that is able to respond immediately or close in time to the incident and involves traveling to the

location of an incident, conducting initial interviews, obtaining relevant physical materials and taking photographs. (Ashanti Decl., Ex. G, ¶ 3) In this instance, IAB Group 9 performed the call out on June 27, 2014, the date of the incident. That initial investigation file was forwarded to IAB Group 54 as that Group handles allegations of force used by an officer. (Ashanti Decl., Ex. G, ¶ 5) Group 54 then carried the investigation forward from that point through to its conclusion. (Ashanti Decl., Ex. G, ¶ 6)

All Groups within IAB utilize a computer database known as the Information Case Management System ("ICIS") to maintain the case during an investigation. (Ashanti Decl., Ex. G, ¶ 4) Everything relating to the investigation should be included within the specific case file number in ICIS, including worksheets detailing any investigatory steps taken as well as photographs, videos, and audio recordings, which then should be uploaded into ICIS and saved indefinitely. (Ashanti Decl., Ex. G, ¶ 4) If a case is transferred from one IAB Group to another Group, as it was transferred from Group 9 to Group 54 in this case, the subsequent investigative group will take over the ICIS file and build onto what the previous investigator had prepared. (Ashanti Decl., Ex. G, ¶¶ 5, 6)

In this case, this office requested a copy of IAB investigation file "C 2014/392" in March 2016. (Ashanti Decl., Ex. G, ¶ 3) In response to that request, an electronic copy of the file was made by copying the file as it was then maintained in ICIS. (Ashanti Decl., Ex. G, ¶ 7) The *only* item relevant to the investigation that was, inadvertently, not contained within C 2014/392 was the June 27, 2014 audio-recording of plaintiff's interview, which was conducted by Detective Joseph Christophe and Sergeant Thomas Meehan of Group 9. (Ashanti Decl., Ex. G, ¶ 8)

Generally, before being uploaded to ICIS, all audio is saved to a file folder accessible to Group 9 investigators only. (Ashanti Decl., Ex. G, ¶ 8) As explained in the Koschmerl Affidavit, the fact that the June 27, 2014 audio recording was not uploaded into case file C2014/392 means that Group 9 inadvertently failed to upload it, creating a deficiency in the file of which Group 54 was not aware. (Ashanti Decl., Ex. G, ¶ 8) Contrary to plaintiff's bald assertion, some IAB interviews are not audio-recorded for various reasons, including but not limited to, lack of available equipment, equipment failure, refusal of subject to be recorded, and lack of feasibility due to the location of the interview. (Ashanti Decl., Ex. G, ¶ 8) Thus, until the June 27, 2014 audio-recording was found by IAB's Group 9, defendants did not know that it existed simply by virtue of the fact that plaintiff had been interviewed by IAB. (Ashanti Decl., Ex. G, ¶ 8)

Moreover, in addition to the audio, details of plaintiff's June 27, 2014 interview were memorialized in an IAB worksheet. (Ashanti Decl., ¶2, Ex. A) However, that worksheet did not contain any reference to the fact that the June 27, 2014 interview of plaintiff had been recorded. (Ashanti Decl., ¶ 2, Ex. A; Ashanti Decl., Ex, G, ¶ 9) Therefore, a review of the worksheet by Group 54 investigators or defense counsel would not have alerted any such individual that an audio-recording of the June 27, 2014 interview ever existed. (Ashanti Decl., Ex. G, ¶ 9) For that reason, additional requests from the Law Department to the then current custodian of case file C 2014/392, Group 54, for an audio-recording of the June 27, 2014 interview netted the same results as the initial request, *i.e.* a response that no such audio-recording existed, as it was not contained within case file C 2014/392, which itself contained all of the *other* audio-recordings created in this case. (Ashanti Decl., Ex. G, ¶ 10) Id. Those other audio-recordings concerned interviews of the defendant officers that were conducted by Group

7

54, not Group 9, *after* the date of the incident. (Ashanti Decl., Ex. H, ¶ 9) Thus, it was the initial failure to upload the audio-recording of the June 27, 2014 interview, which was solely the result of inadvertent error that led to incorrect representations by Group 54, and by defense counsel to plaintiff, that the June 27, 2014 audio-recording did not exist. (Ashanti Decl., Ex. G. ¶ 11)

In late March 2017, after yet another request from this office to IAB for the June 27, 2014 audio, Group 9 was contacted by IAB to conduct a search of its own records. (Ashanti Decl., Ex. G ¶ 12) It was only then that it was discovered that, against protocol, the audio had been in the sole possession of Group 9, as it was not originally uploaded to case file C 2014/392, as it should have been. (Ashanti Decl., Ex. G ¶ 13) As a result, previously, when Group 54 reproduced that case file and provided it to defense counsel for production in discovery, it had reproduced the entire case file except for this particular audio-recording, as the June 27, 2014 audio-recording was the only audio-recording that was not made by Group 54. Thereafter, after a review and copying of the June 27, 2014 audio-recording, this office produced it to plaintiff's counsel on or about April 5, 2017.

### STANDARD OF REVIEW

Plaintiff seeks three forms of severe sanctions under Fed. R. Civ. P. 37: i) striking defendants' answer pertaining to plaintiff's excessive force claim; ii) preclusion of defendants' use of either plaintiff's deposition testimony or audio-recorded IAB interview at trial; and iii) attorney's fees. Such draconian sanctions are entirely unwarranted in this instance where there is simply no evidence of bad conduct or willful misconduct.

The courts have consistently held that, "where a party's misconduct violates a court order, Rule 37(b) allows a court to impose on that party sanctions of varying degrees of severity. Sanctions may include **attorney's fees**, adverse inferences, **preclusion of evidence**,

**striking pleadings**, and default judgment." Hawley v. Mphasis Corp., 302 F.R.D. 37, 46 (S.D.N.Y. July 22, 2014) (citing Fed. R. Civ. P. 37(b)(2)(A)) (emphasis added). The plain language of Rule 37(b) is consistent with this idea that the *violation of a court order* is a prerequisite for the imposition of sanctions in the form of attorney's fees, preclusion of evidence and the striking of pleadings, as plaintiff seeks through the instant motion. Specifically, Rule 37(b) only authorizes sanctions of this nature where a party "fails to obey an order to provide or permit discovery…" Fed. R. Civ. P. 37(b)(2)(A).

Further, in order for these kinds of sanctions to be imposed, a court must *also* find that the failure to uphold the relevant discovery obligation was the product of "willful misconduct or bad faith." See, e.g., National Communs. Ass'n v. AT&T, 92 Civ. 1735 (LAP), 1998 U.S. Dist. LEXIS 3198, *12 (S.D.N.Y. March 16, 1998) (declining to impose the harsh sanctions of Rule 37(b)(2)(A) for lack of evidence of willful misconduct or bad faith). Here, plaintiff has failed to establish these factors – based on the simple truth that defendants do not engage in any such behavior, as the failure to turn over the audio-recording was an innocent and inadvertent clerical error, as explained in the affidavit of Group 9's Lieutenant James Koschmerl. (Ashanti Decl., Ex. G).

## ARGUMENT

### PLAINTIFF'S MOTION SHOULD BE DENIED FOR FAILURE TO MEET THE REQUISITE LEGAL STANDARD

Plaintiff has failed to meet the applicable legal standard for the imposition of sanctions under Fed. R. Civ. P. 37 and, accordingly, his motion should be denied in its entirety.

As an initial matter, while defendants sincerely apologize to the Court and plaintiff for not producing the June 27, 2014 audio-recording earlier in discovery, plaintiff's motion should nonetheless be denied because the courts of our jurisdiction have "a strong

9

preference for resolving disputes on the merits" and treat the striking of pleadings as "the most severe sanction which the court may apply." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)); State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir. 2004). Here, by seeking to have defendants' answer pertaining to plaintiff's excessive force claim stricken from the record, plaintiff is seeking to avoid having the Court resolve this action on the merits, a request which is greatly disfavored by the courts. Id.

Also, as plaintiff has failed to demonstrate that defendants violated *any* court order, much less any discovery order pertaining to the June 27, 2014 audio-recording, the sanctions set forth under Rule 37(b)(2)(A), including the attorney's fees, preclusion of evidence and striking of pleadings that plaintiff seeks herein, are not warranted as a matter of law. See, e.g., Hawley, *supra*, 302 F.R.D. at 46; Fed. R. Civ. P. 37(b)(2)(A). The simple truth, which plaintiff unsuccessfully tried to bury under the subterfuge of his motion, is that defendants did not violate any of the Court's discovery orders, as evidenced by the fact that the only such order plaintiff includes in his motion is an order concerning the notes of an IAB investigator, not the June 27, 2014 audio-recording. (See Rosenblatt Decl., ¶ 2, Ex. K) As the record before the Court establishes that defendants did not engage in any misconduct that violated a court order, plaintiff's motion should be denied in its entirety.

Plaintiff's motion should also be denied because plaintiff has failed to demonstrate either willful misconduct or bad faith on the part of defendants. National Communs. Ass'n v. AT&T, *supra*, 1998 U.S. Dist. LEXIS 3198, * 12. As set forth more fully above, the delay in defendants' production of the June 27, 2014 audio-recording was not due to any desire to frustrate the discovery process, hide evidence or seek to gain any advantage in the

litigation but rather was solely the product of a clerical mistake. The investigators from IAB's Group 9 who conducted the audio-recorded interview of plaintiff inadvertently failed to upload the audio to the case file maintained by Group 54, as protocol required. (Ashanti Decl., Ex. G, ¶ 8) This inadvertent failure to upload the June 27, 2014 audio-recording created the false impression that an audio of the plaintiff's June 27, 2014 interview did not exist. Consequently, during subsequent searches of the case file for such audio, the case file, which appeared to be complete, was found *not* to contain the June 27, 2014 audio-recording, which in turn led to incorrect representations to plaintiff that there was no such audio. (Ashanti Decl., Ex. G, generally) This mistake, while regrettable, is certainly not indicative of willful misconduct or bad faith and does not negate the diligent efforts made by defendants, at the behest of defense counsel, to locate the relevant audio. In fact, as soon as the error in protocol was detected, defendants found and produced the June 27, 2014 audio-recording to plaintiff. (Ashanti Decl., Ex. G, generally)

Accordingly, none of the relief plaintiff seeks – *i.e.*, attorney's fees, preclusion of evidence and the striking of pleadings – is appropriate under Rule 37(b)(2)(A), as neither the violation of a court order nor bad faith is present here.

## **CONCLUSION**

For the reasons set forth herein, plaintiff's motion to strike defendants' answer, to preclude defendants from using plaintiff's deposition testimony and the audio-recording of plaintiff's June 27, 2014 interview at trial and to obtain attorney's fees, should be denied in its entirety. Alternatively, should the Court be inclined to grant any portion of plaintiff's motion, defendants respectfully request that the relief be limited to examination of the defendants and/or IAB investigators by interrogatory, or in the limited context of continued depositions of the

defendants and/or IAB investigators for which the scope is confined to factual allegations plaintiff claims he made exclusively during the interview.

Dated:    New York, New York
           July 3, 2017

                                ZACHARY W. CARTER
                                Corporation Counsel of the
                                City of New York
                                *Attorney for Defendants*
                                100 Church Street
                                New York, New York 10007
                                (212) 356-2371

                By:          /S
                                Karl J. Ashanti, Esq.