UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
ALLEN BROWN,                   : 15-cv-04488-KAM-RER
          Plaintiff,           :
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
CITY OF NEW YORK, et al.,      : May 5, 2016
          Defendants           :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**

<u>**For the Plaintiff**</u>:        **Joel B. Rudin, Esq.**
                           Law Offices of Joel B. Rudin
                           600 Fifth Avenue
                           10th floor
                           New York, NY 10020

                           **Amy Rameau, Esq.**
                           The Rameau Law Firm
                           16 Court Street
                           Suite 2504
                           Brooklyn, NY 11241


<u>**For the Defendant**</u>:        **Karl J. Ashanti, Esq.**
                           The City of New York
                           Law Department
                           Special Federal
                           Litigation Division
                           100 Church Street
                           New York, NY 10007


<u>**Transcription Service**</u>:  <u>**Transcriptions Plus II, Inc.**</u>
                           61 Beatrice Avenue
                           West Islip, New York 11795
                           laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1      THE COURT:  Good afternoon.  This is Judge

2  Reyes.  We're holding a telephone conference in the case

3  of Brown v. The City of New York, docket number 15-cv-

4  4488.

5      Who is on the line for the plaintiff?

6      MR. RUDIN:  Joel Rudin. Good afternoon, your

7  Honor.

8      THE COURT:  Good afternoon.  Who is on for the

9  defendants?

10      MR. ASHANTI:  Karl Ashanti from the Office of

11  Corporation Counsel.

12      Good afternoon, your Honor.

13      THE COURT:  Good afternoon.

14      So Mr. Rudin, your motion to compel has been

15  responded to.  Mr. Ashanti says that he's produced

16  everything that would be characterized as the IAB file.

17  So you have everything that you've asked for.

18      MR. RUDIN:  No, I don't.

19      THE COURT:  What don't you have?

20      MR. RUDIN:  All right.  First of all, let me

21  apologize for yesterday's fiasco.  That was my office's

22  fault and I'm sorry for the inconvenience.

23      What happened, so I filed the letter motion

24  because I wanted to make sure that I received the

25  materials which didn't come in when they were supposed to

Proceedings

1 but they came in, I gather, as Mr. Ashanti received them

2 over a period of time.  And now that I've had the last --

3 the last e-mail with attachments from several days ago

4 and what I don't have are the individual -- well, first

5 of all, I don't have some notes of the detectives, an IAB

6 detective and regular -- well, they may both be IAB

7 detectives, notes of interviews of my client.  One

8 interview occurred the date of the incident and then

9 another individual was a follow-up interview that

10 actually occurred in my office some time later and we

11 have the typed of memoranda but we don't have the raw

12 notes and I'm not sure whether or not Mr. Ashanti is

13 agreeing to providing those notes.  We've had a

14 discussion but the last time we spoke, we hadn't yet

15 agreed.

16        And the second thing is there are many entries

17 in the IAB records concerning unrelated -- well, separate

18 claims made against a number of the different -- of the

19 officers that concern issues that are relevant to this

20 case such as the use of unnecessary force, arrests that

21 have been called into question or acts of dishonesty and

22 Mr. Ashanti has agreed to provide the underlying files

23 from those cases but that's going to take some additional

24 time.  So that's nothing that I realized existed until I

25 reviewed these records in the last few days and we did

Proceedings

1  have a conversation about that.  I understand that he's

2  agreed to provide that but we just need a timetable for

3  that.

4         There's one other thing and that is that there

5  are a number of photo arrays that were shown to my client

6  that involved police officer suspects and Mr. Ashanti

7  redacted them and I understand that there are privacy

8  concerns that police officers have and I only realized

9  that these were the records that were redacted when we

10 spoke recently.  I haven't had the chance to research the

11 issue.  So I thought that I would not raise that issue

12 now and research it further and then if we can't agree,

13 then that would I guess have to be a separate

14 application.

15         MR. ASHANTI:  Your Honor, if I may?

16         THE COURT:  Sure.

17         MR. ASHANTI:  So just to kind of start at the

18 beginning, I think your Honor's initial statement is

19 correct as of now, meaning the IAB -- and our

20 representation in our letter, the IAB file per say has

21 been fully produced.

22         As Mr. Rudin points out, there are indications

23 of other documents that fall outside of the IAB file that

24 plaintiff is seeking that really would not fairly be

25 characterized as part of the IAB file itself.

Proceedings

1    For instance, he mentions -- and I think it was

2  a Freudian slip, the unrelated underlying disciplinary

3  allegations that actually I don't think any of them led

4  to actual discipline because I don't think there are any

5  substantiated ones but the unrelated as he -- his term,

6  underlying files of allegations from other cases,

7  separate cases, that were made individually against some

8  of the officers.

9    So, you know, that is something that would

10  require some time to obtain and that even after we

11  obtained them, depending on how, you know, voluminous

12  they are, I don't know at this point, in order to prepare

13  them for production with appropriate redactions.  So

14  that's one issue.

15    The other notes that he mentions, and the

16  reason that I haven't given, you know, the defendant's

17  final position on that is because I don't -- I'm not in

18  possession of the notes.  They are not part of the file,

19  the IAB file, and so I have to obtain them and then look

20  at them in order to determine, you know, if they are

21  privileged on the whole or if, you know, parts of them

22  are privileged.

23    We obviously would produce any parts that we

24  would find, you know, determined not to have privilege

25  amongst those notes but I think there may be a -- it may

Proceedings

1    be the case that the notes on the whole, you know, are

2    subject to some deliberative process privilege or

3    something of the like.  So I have to obtain them first

4    before I can make a representation after that.

5              And then there are the, you know, photo arrays

6    that Mr. Rudin mentioned which we, you know, strongly

7    believe that there's -- it's not just photo arrays but

8    they're photo arrays with information associated with

9    them and the information associated with them has been

10   produced.

11             So for instance, the plaintiff was shown

12   photographs of certain officers and identified who, you

13   know, subjected him to excessive force, you know, the

14   kind of force that he alleges.  And there are -- where he

15   doesn't pick on anyone.  You know, it's shown in his

16   notes.  I think it's his handwriting, actually so that no

17   I.D. or someone else's handwriting but it's clearly

18   indicated no I.D. and I've given Mr. Rudin the

19   information as to who that applies to.  So even though

20   the pictures aren't shown, I've told him well that's

21   Officer Biondolillo.  He's one of the people that are

22   shown in these photographs and plaintiff did not, you

23   know -- said -- did not identify him, so there was no --

24   that no I.D. notation that is revealed.

25             There was one where he did pick out someone and

Proceedings

1  I readily stated to Mr. Rudin that that is Sergeant

2  Garcia.  So while the photograph isn't shown and the

3  photograph of the fillers aren't shown, all the

4  information shown is indicating that he did identify

5  Sergeant Garcia as an assailant, for lack of a better

6  term and he describes the force that he claims to have

7  been subjected to.  You know, I've volunteered that

8  information.  All of that's revealed.

9          And I told Mr. Rudin that applies to Sergeant

10  Garcia because there's no dispute as to that. It's just a

11  photograph of themselves, the images that really there

12  are strong privacy concerns, security concerns for these

13  officers and I don't really see the need given that all

14  the information regarding those have been disclosed, I

15  don't see the need for the actual photographs.

16          THE COURT:  What?  Wait, wait  second.  What's

17  -- how many photo arrays were shown to plaintiff?

18          MR. ASHANTI:  It's somewhere in the order of

19  five to ten, your Honor.

20          THE COURT:  Photo arrays or individual photos?

21          MR. ASHANTI:  They're -- it's an array.  Each

22  one is an array.  So it's like a sheet of paper in color

23  with images of -- I think at least six to ten members of

24  service.

25          THE COURT:  Okay.  And those members of service

Proceedings

1  are -- the photographs are designed to look somewhat

2  similar to the officer who pertains to that sheet of

3  paper.

4          So there's one sheet for Office Biondolillo,

5  one sheet for Sergeant Smith, one sheet for Detective --

6  oh, for Sergeant Garcia and so on.  So each sheet of

7  paper is, you know, an opportunity for plaintiff to

8  identify one of the individuals who was present and --

9          THE COURT:  Here's -- you know, Mr. Rudin,

10 allow me to do you work for you.

11         MR. RUDIN:  Okay.

12         THE COURT:  Only where it's relevant.  The

13 defendants are going to argue at some point whether it's

14 on motion or at trial, the plaintiff couldn't even pick

15 out the officers in a photo array.  Then the relevance is

16 well, let's look at the photo array to see if it's a good

17 photo array.  I mean, there's a lot of case law and the

18 adequacy of a photo array, whether you know coming from

19 the other perspective, whether they're unduly suggestive.

20         You know, so if the defendants want to keep

21 that argument open, they should show pictures and I don't

22 understand why a picture of an officer has any privacy

23 concerns.  They are public officials, you know.  There's

24 no question whether they're officers or not.

25         I mean if you wanted to redact Tax I.D. numbers

Proceedings

1 or, you know, other things like that, I could understand

2 but the actual picture?

3          MR. ASHANTI:  Well, your Honor, there is case

4 law on that that's supportive of our position and the

5 basic idea -- you know, and I'll get -- I would -- if

6 your Honor is prepared to rule on it, I would ask for the

7 opportunity to brief the issue but the general idea is

8 that they can be disseminated and so you have the

9 identification of this person.  You have -- it's not just

10 like you see an officer on the street and, you know, you

11 recognize him or her or you don't and then you just move

12 on your merry way.  When you have a photograph, it can be

13 disseminated and whenever impositions or -- regarding

14 this officer, or you know whatever you want to say this

15 officer has done, whoever you want to say this officer

16 has wronged, you know, those kind of stories and

17 narratives conspiracy be attached to that photograph and

18 that identity and then that officer or officers can be

19 made targets that way --

20          THE COURT:  That's --

21          MR. ASHANTI:  -- has been done in the past.

22          THE COURT:  -- that's easily protected against

23 with, you know, do you have a protective order in this

24 case and, you know --

25          MR. ASHANTI:  It --

Proceedings

1    THE COURT:  -- Mr. Rudin doesn't get to show it

2 to anybody but his client.  His client doesn't get a

3 copy.  You can't put it up on the Internet.  Can't put it

4 on his Facebook.  Can't do, you know -- I mean, we could

5 protect against that.

6    MR. ASHANTI:  Well, I'm sorry, your Honor, I

7 just needed to parse what you just said because I may

8 have missed part of it.  Is that part of what you

9 mentioned that he wouldn't show to plaintiff?

10    THE COURT:  No, no.  I mean he has to be able

11 it show it to plaintiff.  I mean, if I --

12    MR. ASHANTI:  Okay.

13    THE COURT:  Mr. Rudin, were you present when

14 these photo arrays were shown to your client?

15    MR. RUDIN:  Yes.  I don't recall seeing the

16 photo.  The photo themselves when I was present when the

17 officer showed them to my client.

18    THE COURT:  I mean he would -- Mr. Rudin would

19 need to show them to his client but --

20    MR. ASHANTI:  But, your --

21    THE COURT:  -- but --

22    MR. ASHANTI:  I'm sorry, your Honor.

23    THE COURT:  -- with the (indiscernible) to make

24 sure that Mr. Rudin -- Mr. Rudin, you don't give copies

25 to your client.  Your client doesn't -- you show them to

Proceedings

1  him in your office.  He doesn't leave with any of it.

2        MR. RUDIN:  Yes.

3        THE COURT:  And at the end of the case, win,

4  lose or draw, they get given back to Mr. Ashanti.

5        MR. RUDIN:  That's fine.

6        MR. ASHANTI:  Your Honor, if I may, just two

7  things I would like to raise.  One is, I really don't

8  know or Mr. Rudin hasn't at least mentioned to me yet,

9  what relevance they would have for the case given the

10 fact that, you know, so for what purpose they would be

11 shown to plaintiff --

12       THE COURT:  because --

13       MR. ASHANTI:  -- given the fact that he's

14 already seen them and he's already either identified or

15 not, the individuals who are present in the array.

16       THE COURT:  He has identified all of the

17 officers who are present.

18       MR. RUDIN:  No, he identified one and the

19 others he apparently was unable to make a positive

20 identification.

21       THE COURT:  So at trial if you get there, he's

22 going to testify on direct from Mr. Rudin.  Do you see

23 any of the officers in this courtroom today that roughed

24 you up?  Yes.  Can you point them out?  Boom, boom, boom,

25 boom.  He points them out.  On cross-examination, you

Proceedings

1  were shown a photo array, right?  You couldn't pick out

2  any of them?  You see there's -- there's the relevance.

3          MR. ASHANTI:  But, your Honor --

4          THE COURT:  If you want to --

5          MR. ASHANTI:  I'm sorry, your Honor.

6          THE COURT:  -- if you want to give up the

7  ability to cross-examine them on that --

8          MR. ASHANTI:  But that's something that's

9  happened in the past, your Honor.  It's a fact beyond

10 change.

11         THE COURT:  What?

12         MR. ASHANTI:  It's a fact beyond change.  These

13 photo arrays were shown I believe in 2015.  So I don't

14 see how --

15         THE COURT:  Mr. Ashanti, it is -- I don't

16 understand how you can't see the relevance.  In 2015, you

17 couldn't pick out anyone or you could only pick out one

18 person.  Isn't that right, Mr. Brown?  Even if he admits

19 it, yes.  But now today you're telling this jury that

20 these five guys or whoever -- however many are the ones

21 who beat you up, right?

22         MR. ASHANTI:  I follow that completely, your

23 Honor, but I don't understand what showing these

24 photographs now --

25         THE COURT:  The adequacy of the photo array,

1  you're telling me that they all look -- everyone in the

2  photo array looks like or as alike as you can get. I

3  don't know that that's the truth. Mr. Rudin doesn't know

4  that that's the truth. And if the photo array is a crap

5  photo array, then that could be the reason why he

6  couldn't pick anybody out.

7          MR. ASHANTI: Okay, your Honor.

8          THE COURT: I don't know and again, I don't

9  know what the harm is if he looks at -- if Mr. Rudin

10  looks at the photo array with his client and the photo

11  array stays in Mr. Rudin's possession, I don't understand

12  how that harms the officer's privacy.

13          MR. ASHANTI: As I mentioned, your Honor, we

14  would simply like the opportunity to brief the issue. If

15  we could, and I think that this would be a really

16  reasonable course to take, have until Monday to

17  communicate to Mr. Rudin our position, whether we consent

18  to specifically an attorney's eyes only stipulation that

19  would then allow for the production of the photo arrays

20  unredacted or if we then seek to oppose affirmatively. I

21  think that that would be reasonable compromise because it

22  may be that upon reflection that an attorney's eyes only

23  stipulation which is not in place now, it's not

24  attorney's eyes only, a stipulation would be sufficient

25  or I believe depending on the case law, that may be

Proceedings

1   determined not to be.

2          THE COURT:  All right.

3          MR. ASHANTI:  But in any event, I think --

4          THE COURT:  If you can work it out by Monday,

5   so be it.  If you can't, I want to see a letter opposing

6   disclosure by Wednesday and then Mr. Rudin, by Friday,

7   you could respond.

8          MR. RUDIN:  That's fine but I mean I would

9   never agree to attorney's eyes only because I need to

10  discuss it with my client why he did or did not make an

11  identification --

12         MR. ASHANTI:  Well with the caveat

13  (indiscernible).

14         MR. RUDIN:  -- (indiscernible) possibly

15  (indiscernible) purpose.

16         MR. ASHANTI:  Something that's tailored in the

17  manner that Judge Reyes had --

18         MR. RUDIN:  Oh, yeah, absolutely.  That's fine.

19  Yeah.  But okay, I understand the schedule and that's

20  fine.

21         THE COURT:  Mr. Ashanti said he's working on

22  getting these notes.  He's going to try to find out where

23  they are.  And he's going to get you the similar files or

24  the files of similar allegations in front of the IAB.  So

25  that really resolves everything, other than maybe giving

Proceedings

1  Mr. Ashanti a time frame to do this.

2          MR. RUDIN:  Yeah, I was hoping to have a time

3  frame.  I think that might help move us along but the

4  other thing is we had a May 20th deadline to report to

5  the Court on status and it's now clear that there may not

6  be anything new to report because I don't think we're

7  going to get anything significant done in terms of

8  depositions before May 20th. So it might be helpful if we

9  had a new deadline.  Unless your Honor would just prefer

10 to have us write on May 20th and explain --

11         THE COURT:  Why don't you write on May 20th --

12         MR. RUDIN:  -- what the status is then.

13         THE COURT:  -- May 20th is a Friday.  You know

14 what?  I want a status report on May 27th on where you

15 are with the case.  Mr. Ashanti will have a better idea

16 at that point about these notes and files on the other

17 incidents.  And he can -- you know, I don't want to set a

18 date for disclosure of these documents if it's

19 artificial, if the City has no way of -- no chance of

20 complying with that.  I know how difficult it is

21 sometimes getting documents from the P.D.  So I want to

22 accommodate them to some degree.

23         So May 27th, you'll give me a status report,

24 where things stand and we'll take it from there.

25         MR. RUDIN:  Certainly, your Honor.

Proceedings

1          MR. ASHANTI:  Okay, that's fine.

2          THE COURT:  All right.  Now -- I'm sorry, its'

3   very hard to keep all of these cases straight.  Is this

4   the case where the guy jumps out of the rental car and

5   takes off?

6          MR. RUDIN:  Yes, your Honor.

7          MR. ASHANTI:  Yes.

8          THE COURT:  All right.  That's what I thought

9   it was.  Okay.  And you've had no settlement discussions

10  since we last spoke, is that correct?

11         MR. RUDIN:  That's correct.

12         THE COURT:  All right.  Well --

13         MS. RAMEAU:  Good afternoon, everyone.  Good

14  afternoon, uh.  Amy Rameau for the plaintiff.

15         THE COURT:  We're done, Ms. Rameau.

16         MS. RAMEAU:  Okay.

17         MR. RUDIN:  Amy, I will fill you in.

18         MS. RAMEAU:  Okay.  Bye-bye.

19         THE COURT:  Okay.  Well if you need me for

20  anything else, you know where to reach me.

21         MR. RUDIN:  Thank you, your Honor.

22         MR. ASHANTI:  Thank you.

23         THE COURT:  Thank you.

24              (Matter concluded)

25                   -o0o-

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **24th** day of **July**, 2017.

*Linda Ferrara*
Linda Ferrara

AAERT CET\*\*D 656
Transcriptions Plus II, Inc.