# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-4488 (KAM)(RER)

ALLEN BROWN,

Plaintiff,

VERSUS

THE CITY OF NEW YORK, JEFFREY SMITH, JERRY GARCIA, ANTHONY BIONDOLILLO, AND JOHN DOE 1-5,

Defendants.

MEMORANDUM AND ORDER

October 11, 2017

**RAMON E. REYES, JR., U.S.M.J.:**

On June 27, 2014, Allen Brown ("Brown") was arrested following a traffic stop in Brooklyn, New York. (Dkt. No. 1). Approximately thirteen months later, Brown commenced this civil rights action for excessive force and false arrest against the City of New York (The "City") and several officers of the New York City Police Department (the "Officers") (collectively the "Defendants"). (Dkt. No. 1). Following the close of discovery the Defendants provided Brown with a long sought but previously unproduced NYPD Internal Affairs Bureau ("IAB") audio recording of an interview conducted shortly after his arrest (the "IAB Audio"). (Dkt. Nos. 51 & 54). Brown raised the issue of discovery sanctions at a conference before the Honorable Kiyo Matsumoto, the assigned district judge, and was instructed to seek relief from this Court. (Dkt. No. 41; Minute Entry Dated 4/12/2017).

Brown has moved for discovery sanctions pursuant to Fed. R. Civ. P. 37 and the Court's inherent authority, including striking portions of the Defendants' answer, precluding use of the late disclosed recording or Brown's deposition, and an award of costs and fees. (Dkt. No. 51). For the reasons set forth below, the Defendants are precluded from using Brown's original deposition whether on motion or at trial. Defendants will be permitted to redepose Brown, should they so desire. The Defendants may not reference Brown's original deposition at this

1

redeposition. Defendants are also ordered to pay Brown's fees and costs in connection with his original deposition and the instant motion. Discovery is extended for an additional thirty days for the limited purpose of redeposing Brown.

## BACKGROUND

At approximately 1:00 a.m. on the morning of June 27, 2014, the police stopped a vehicle traveling through Flatbush, Brooklyn. (Dkt. No. 15 (Amended Complaint ("AC")) at ¶ 17). After initially stopping, the driver of the vehicle, who is not identified in the pleadings, drove away in an apparent attempt to evade the police. (AC at ¶ 18). Shortly thereafter, the driver stopped the vehicle and fled on foot. (AC at ¶ 19). Brown, a passenger surprised to find himself in the midst of a police chase, also fled and attempted to hide. (AC at ¶ 20). Ultimately, Brown was spotted and arrested. (AC at ¶ 22). The details of his arrest are disputed and form the crux of the instant litigation. What is clear, however, is that by the time Brown was handcuffed and placed in a police car he was bleeding from a large gash on his head, which would ultimately require staples to close, and had suffered a host of other minor injuries. (AC at ¶¶ 22-23).

Following his arrest, Brown was taken to a local hospital for treatment. (AC at ¶ 23). Approximately three hours later, while still untreated and shackled to a hospital bed, Brown was interviewed by Detective Christophe ("Christophe") and Sergeant Meehan ("Meehan") of IAB Group 9. (Dkt. No. 50-2 (Deposition of Allen Brown ("Brown Tr.")) at 191:7, 193:12; Dkt. No. 50-5 (Transcript of IAB Interview ("IAB Audio Tr.")) at 1). Christophe and Meehan asked Brown questions related to his arrest and his allegations of excessive force. (IAB Audio Tr.). They audiotaped this interview in compliance with standard IAB procedures. (Dkt. No. 50-14 (Deposition of Detective Meehan ("Meehan Tr.")) at 34:17-18; Dkt. No. 50-13 (Deposition of Detective Christophe ("Christophe Tr.")) at 16:20-22). After leaving the hospital, Christophe and Meehan wrote a summary of the interview (the "Interview Summary") and transferred their records (the "IAB File") to Group 54 to handle the remainder of the investigation. (Dkt. No. 53-7 (Affidavit of Lieutenant James Koschmerl ("Koschmerl Aff.")) at ¶ 3).

The Defendants produced the IAB File timely, but the file did not contain the IAB Audio. Defendants did not locate and produce the IAB Audio until after the close of discovery. (Dkt. Nos. 51 & 54). According to the Defendants, they conducted a "diligent" search for the IAB Audio but due to an "inadvertent clerical error" they failed to find it and produce it in a timely manner. (Dkt. No. 54 (Memorandum in Opposition ("Dfs. Br.") at 9; *see also* Koschmerl Aff. ¶ 8)).

According to Leutenant Koschmerl of IAB Group 9, all IAB Groups "utilize a computer database called the Information Case Management System [("ICIS")] to maintain the case file during an investigation." *Id.* at ¶ 4. All materials, including audio recordings, should be uploaded onto ICIS and attached to a case file. *Id.* When a case file is transferred between groups, custody of the IAB File on ICIS is also transferred. *Id.* at ¶¶ 5-6.

Here, Group 9 had original custody of the IAB File, but transferred the file to Group 54, which is responsible for all excessive force claims. *Id.* at ¶¶ 1 & 6. For some unknown reason, the IAB Audio was "inadvertently" not uploaded onto the IAB File stored on ICIS. *Id.* at 8. As a result, when

2

the Defendants requested the IAB File from Group 54, the IAB Audio was not forthcoming. *Id.* at ¶ 10. However, once a request was sent to Group 9, albeit woefully late, the IAB Audio was almost immediately located in a file accessible only by Group 9, and disclosed. *Id.* at ¶ 12.

**DISCUSSION**

Brown contends that the untimely disclosure of the IAB Audio has resulted in sever prejudice warranting the imposition of sanctions under Rule 37 of the Federal Rules of Civil Procedure or, alternatively, under this Court's inherent authority. (Dkt. No. 51 (Memorandum in Support of Plaintiff's Motion for Discovery Sanctions ("Pl. Br.")) at 13 & 17). Specifically, Brown requests (1) that the Defendants be precluded from using either or both the IAB Audio and the transcript of Brown's original deposition which was conducted prior to the disclosure; (2) that those portions of the Defendants' answer responding to Brown's excessive force claims be stricken; and, (3) that he be awarded costs and fees stemming from the Defendants' violation. (Pl. Br. at 1-2).

**I. Sanctions Are Warranted**

When seeking sanctions for the failure to produce discovery timely, the moving party must show that (1) the party with control over the evidence had an obligation to timely produce it; (2) the party had a "culpable state of mind"; and (3) the missing evidence is relevant to the requesting party's claim or defense "such that a reasonable trier of fact could find it would support that claim or defense." *Valentini v. Citigroup, Inc.,* No. 11 Civ. 1355, 2013 WL 4407065, at *2 (S.D.N.Y. Aug. 16, 2013) (quoting *In re September 11th Liability Insurance Coverage Cases,* 243 F.R.D. at 125). All three elements are met here.

Defendants were under an affirmative obligation to timely produce the IAB Audio as Brown explicitly and repeatedly requested it during discovery. Beginning with his first set of interrogatories and first request for production of documents on November 17, 2015, Brown sought the production of the IAB Audio. (Dkt. No. 50-7 (written request for "[a]ll written or recorded statements taken by defendants…or taken by someone acting on any defendants' behalf, related to plaintiff's arrests and/or prosecutions, and the surrounding circumstances."). Brown filed a motion to compel on April 22, 2016 in which he requested "all IAB records of the investigation." (Dkt. No 25 (Letter Motion to Compel Document Discovery)). Defendants responded to this request on April 29, 2017 (Dkt. No. 53-5), and again on May 2, 2016 by producing a CD file of IAB records that purported to include "the audio-recorded interviews conducted by IAB investigators." (Dkt. No. 26). However, neither response included the IAB Audio. (*See* Dkt. No. 50-8 (written request for additional discovery on May 4, 2017 which names Christophe as the IAB officer who interviewed Brown on June 27, 2014 and requests Christophe's notes and recording of the interview)). In a May 5, 2016 telephone conference, the Defendants reported to the Court that the IAB file had been fully produced. (Dkt. No. 56 (Tr. of the May 5, 2016 Telephone Conference) at 4:20-21). However, Brown continued to request missing pieces of the IAB file, including the audio recordings, throughout the summer and fall of 2016. (*See* Dkt. Nos. 50-10, 50-11, 50-12 (email requests for the IAB Audio)). Brown also repeatedly suggested that the Defendants' failure to produce the IAB Audio was delaying his own deposition in this matter. (*See* Dkt. No. 50-9 ("[W]hy the delay in producing [Brown's] statements to

IAB?...[Defendants] would be able to [take Brown's deposition] following the production of lineup photos and interview materials."); Dkt. No. 50-11 ("We would like to schedule depositions for September but cannot do so until you provide the required discovery."); Dkt. No. 44 (Tr. of the August 4, 2016 Telephone Conference) at 14:9-12 (statement by Brown's attorney: "I just don't want to be in a position of having [Brown] testify at a deposition and then find out that at some point he is going to be impeached with some statement that he made to IAB that we didn't have."). Defendants had control of the IAB Audio throughout the entire discovery period, they were served with repeated discovery requests, and therefore, they had an obligation to timely produce this evidence.

It is clear that the IAB Audio is relevant to and arguably supports Brown's claims. IAB officers Christophe and Meehan interviewed Brown in the hospital on the day of his arrest. (IAB Audio Tr. at 1.) Brown's interview with these officers is his contemporaneous explanation of events. At the time of the interview, Brown was awaiting treatment for his injuries and was likely on pain medication (*see id*. at 3), but he was able to describe his arrest in some detail. (*See id*. at 4-9 (describing the location of the arrest, the sequence of events, and the clothing and tattoos of the officers involved). The IAB Audio also provides details of Brown's story that are not listed in Meehan and Christophe's notes or any other documents collected by IAB. (*See* Pl. Br. at 9-10). Therefore, the IAB Audio contains new information and is clearly relevant to the dispute over Brown's arrest.

It also clear that defendants had a culpable state of mind. The "culpable state of mind" element is satisfied by a showing that "a party has breached a discovery obligation ... through bad faith or gross negligence [or] *ordinary negligence*." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) (emphasis added); *see also Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296 (2d Cir. 2006) ("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."); *Valentini,* 2013 WL 4407065, at *3 (culpable state of mind established where party was "at least negligent in failing to properly search for and produce responsive documents in a timely and thorough manner"); *R.F.M.A.S., Inc. v. Mimi SO,* 271 F.R.D. 13, 23 (S.D.N.Y. 2010) ("In the Second Circuit, negligence is sufficient to establish culpability.").

Defendants argue that sanctions cannot issue because their failure to produce the IAB Audio timely was due to an innocent mistake and was neither willful nor done in bad faith. (Dfs.' Br. at 10 ("Plaintiff's motion should also be denied because plaintiff has failed to demonstrate either willful misconduct or bad faith on the part of defendants.").[1] Bad faith or willful

---

[1] Relying on Federal Rule of Civil Procedure 37(b), Defendants argue principally that sanctions are not available because the Court never issued an express order requiring the production of the IAB Audio. (Dfs.' Br. at 9-10). While it is true that the Court did not issue an express order requiring the production of the IAB Audio, that does not mean sanctions may not issue. "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014) (quoting *Residential Funding Corp.,* 306 F.3d at 106-07). This is because "[f]ederal courts possess certain inherent powers, not conferred by rule or statute…includ[ing] the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186, 197 L.Ed.2d 585, 85 USLW 4197 (2017).

misconduct, of course, is not required. Negligence may suffice. *E.g., Residential Funding Corp.,* 306 F.3d at 113. Upon review of the facts this Court rejects the Defendants' claim of innocence and finds that their failure to disclose the IAB Audio was at the very least the product of negligence, if not negligence so gross as to be willful.

A party that has been served with a discovery request is obligated to find and disclose all responsive documents. *E.g., Nycomed U.S. Inc. v. Glenmark Generics Ltd*, No. 08-CV-5023 (CBA)(RLM), 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). This imposes an affirmative duty on the responding party to "conduct a diligent search" for the requested material. *Id.* When parties or their counsel fail to sustain this duty, sanctions may be appropriate, even where the misconduct involves late disclosure, as opposed to spoliation. *Id*.

Here, Defendants failed to conduct a diligent search. From March 2016, when they initially requested and received the IAB files from IAB Group 54, Defendants knew that members of IAB Group 9 had conducted the initial interview with Brown while he was still in the hospital. (*See* Dkt. No. 53-1 (Declaration of Karl Ashanti ("Ashanti Decl."), Ex. A)). In May 2016, Brown specifically requested the notes and any recording of the interview by Det. Christophe, one of the Group 9 officers, thus putting Defendants on notice that the IAB file might be incomplete. (*See* Dkt. No. 50-8). Although it may be true that IAB does not record every interview (*see* Koschmerl Aff.

at ¶ 8), audio recordings are "usual practice" according to the IAB officers. (Christophe Tr. at 16:20-22). It would have been relatively simple for the Defendants to ask the two officers from Group 9 whether they recorded the interview as per IAB protocol. They could have done that early during discovery, rather than making repeated requests to Group 54, which had no knowledge of the recording and no way of accessing Group 9's files. (*See* Koschmerl Aff. at ¶ 8-9). Defendants could have also made a request directly to Group 9 in December of 2016 following the deposition of Det. Christophe in which he said that it was "very likely" that he had recorded the interview. (Christophe Tr. at 14:15-18). Instead, Defendants waited to approach Group 9 until March of 2017 (see Koschmerl Aff. at ¶ 12), following the close of discovery and a court order to produce the recording (Dkt. No. 47 (Tr. of the March 2, 2017 Final Pretrial Conference) at 10:5-7). Defendants did not produce the audio recording until April 5, 2017. (Pl. Br. at 9).

Defendants' failure to conduct a diligent search for and produce the IAB Audio was at the very least negligent. This violation of their duty to conduct a diligent search for the IAB Audio continued for the entirety of the discovery period. In light of the Defendants' negligence and the prejudice suffered by Brown, some form of preclusion is warranted.[2]

### III. Appropriate Sanctions

Courts may impose a wide range of discovery sanctions, ranging from preclusion

---

[2] Plaintiff also seeks sanctions under Rule 37(c). Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")**.** Such sanctions are not available, however, because (1) Defendants obligation to disclose the IAB Audio did not arise under Rule 26(a) – the tape is not something Defendants would use to support their defenses; and (2) Defendants did not learn in a timely manner that their initial disclosure was "incomplete or incorrect."

of evidence to default judgment and dismissal. In selecting an appropriate sanction courts consider "(1) the willfulness of the non-complaint party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-complaint party had been warned of the risk of sanctions." *Lopez v. Cajmant LLC*, No. 15-CV-593(SLT)(RER), 2016 WL 7017361, at *2 (E.D.N.Y. Dec. 1, 2016) (internal citations, quotations, and brackets omitted). A court should seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future. *See Verna v. U.S. Bank National Association*, 15–CV–1127, 2016 WL 5107115, at *3 (N.D.N.Y. Sept. 20, 2016); *Grammar v. Sharinn & Lipshie, P.C.*, No. 14 Civ. 6774, 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016); Hawley, 302 F.R.D. at 46.

Failure to produce the IAB Audio has prejudiced Brown in at least two ways. First, it deprived him of an opportunity to refresh his memory prior to his own deposition, resulting in inconsistent testimony that could be used to impeach his credibility. Second, it deprived him of information that might have guided discovery, especially as it related to the Officer's depositions.

In the IAB Audio Brown, untreated, handcuffed to a hospital bed, and possibly under the influence of pain medication, exhibits a great deal of difficulty focusing or following and understanding questions. (IAB Audio Tr. at 2). Despite his confusion, which resulted in answers such as "[u]m…wat, what's going on?", Brown attempted to answer Christophe and Meehan's questions. *Id.* His recollection of events, however, differs in several key respects from his recollection following recovery, as evidenced by his own deposition. Key differences included: (1) the physical description of his assailants, including clothing and visible tattoos, and (2) the manner in which he received the gash on his head, his primary injury. *Compare* IAB Audio Tr. *and* Brown Tr.

Brown's requested sanction – striking Defendants' answer with respect to the excessive force claim – is too harsh. Striking a party's pleadings is among "the most extreme sanctions available." *Shaw v. Marcus*, No. 14 Civ. 3849 (NSR)(JCM), 14 Civ. 5653 (NSR)(JCM), 2017 WL 825317, at *4 (S.D.N.Y. Mar. 1, 2017) (internal citations and quotations omitted). Because it is such a drastic remedy, it is reserved for those rare cases in which it is necessary to achieve the purpose of sanctions as a credible deterrent, and in true cases of bad faith or willfulness. Also, striking the Defendants' pleadings is not warranted because "a lesser sanction will suffice to allow the parties to litigate the issues on the merits while preventing [the Defendants] from gaining an unfair advantage[.]" *Williams*, 2015 WL 4624226, at *6.

Given all the circumstances, the most appropriate sanction is to preclude Defendants from using Brown's original deposition either on motion or at trial. Nevertheless, discovery is extended for the limited purpose of redeposing Brown. The Defendants may not reference Brown's original deposition at this renewed deposition.

Additionally, in light of the remarkable lack of diligence exhibited by the Defendants, and the additional costs created by bringing this motion and redeposing Brown, the Defendants are liable for the cost of the original deposition and of bringing this motion.

The Defendants will gain no advantage from their failure to diligently seek

the IAB Audio. They have lost their opportunity to use the Brown's original deposition. Brown has also been afforded a second chance at being deposed, with costs for the original deposition and this motion falling on the Defendants. This is sufficient to effectuate the purpose of sanctions to remedy the wrong and deter improper conduct in the future.

## **CONCLUSION**

For the reasons set forth above, the Defendants are precluded from Brown's original deposition transcript on motion, at trial, or at Brown's re-deposition. Additionally, the Defendants are liable for the costs of Brown's original deposition and of bringing this motion. Discovery is extended for an additional thirty days for the limited purpose of redeposing Brown.

SO ORDERED

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge
Dated: October 11, 2017