UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------
ALLEN BROWN,

                    Plaintiff,

                                                    15-cv-4488 (KAM)(RER)

              -against-

THE CITY OF NEW YORK,
Police Officer JEFFREY SMITH, Shield No. 5466,
Sergeant JERRY GARCIA, Shield No. 2320, Police
Officer ANTHONY BIONDOLILLO, Shield No. 4033, and
Police Officer JAY RICHIEZ, Shield No. 4293,

                    Defendants.
----------------------------------------------------------------------

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S FEE APPLICATION

---

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.      The Hours Being Billed for Defending Plaintiff's Deposition, Handling the Sanctions Motion and the Appeal, and Preparing this Fee Application, Are Reasonable ............ 1

II.     The Hourly Rates Sought Are Reasonable ................................................................... 6

     A.     Plaintiff's Counsel are Entitled to Market Rates for Lawyers of Their Skill, Reputation, and Experience ................................................................................ 6

     B.     The Presumption in Favor of the "Forum" Rule Does Not Apply Because Fees and Costs Were Awarded as Sanctions ............................................................. 6

     C.     Even if the *Simmons* Test Applies, Plaintiff's Counsel Should Receive Their SDNY Market Rate ............................................................................................ 9

     D.     The Hourly Rates Sought are Reasonable ....................................................... 12

          i.     Joel B. Rudin .......................................................................................... 12

          ii.     Terri Rosenblatt .................................................................................... 16

          iii.     Associates .............................................................................................. 16

III.     Plaintiff is also Entitled to Reasonable Costs ............................................................ 17

CONCLUSION ............................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abdell v. City of New York*, No. 05-cv-8453 (RJS), 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) .... ............................................................................................................................... 13, 15

*Alicea v. City of New York*, No. 13-cv-7073 (JGK), 2017 WL 3412100 (S.D.N.Y. Aug. 8, 2017) ...................................................................................................................................... 13

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853 (PGG), 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) ...................................................................................... 13

*Auscape Int'l v. Nat'l Geographic Soc.*,  No. 02-cv-6441 (LAK)(HBP), 2003 WL 21976400 (S.D.N.Y. Aug. 19, 2003) ...................................................................................... 18

*Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 WL 3545941 (S.D.N.Y. Jun. 16, 2016) ............. 13

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011)...................................... 13

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ......................... 6

*Broadcast Music, Inc. v. The Living Room Steak House, Inc.*, No. 14-cv-6298 (FB)(RER), 2016 WL 756567 (E.D.N.Y. Feb. 26, 2016) (Reyes, M.J.), *report and recommendation adopted sub nom. Broadcast Music, Inc. v. Living Room Steak House, Inc.*, No. 14-cv-6298 (FB)(RER), 2016 WL 1056609 (E.D.N.Y. Mar. 17, 2016) (Block, D.J.) ............... 14

*Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259 (2d Cir.1994)............................................................................................................... 7

*Ceglia v. Zuckerberg*, No. 10-CV-00569 (RJA)(LGF), 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) ........................................................................................ 7, 8

*Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202 (E.D.N.Y. 2007) (Vitaliano, D.J.) ........... 17

*Clarke v. Frank*, 960 F.2d 1146 (2d Cir. 1992) ............................................................................ 1

*Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142 (2d Cir. 2001) ................ 6

*Demonchaux v. Unitedhealthcare Oxford*, No. 10-cv-4491 (DAB), 2014 WL 1273772 (S.D.N.Y. March 27, 2014)...................................................................................... 16

*Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05-CV-4836, 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007)...................................................................................... 14

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204 (2d Cir. 2005)................................................ 6

*Farrar v. Hobby,* 506 U.S. 103 (1992) ...................................................................................... 6

*Germain v. Cty. of Suffolk*, 672 F. Supp. 2d 319 (E.D.N.Y. 2009) (Spatt, D.J.) ....................... 11

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992)........................................................................ 1

*Green v. Torres*, 361 F.3d 96 (2d Cir. 2004) .......................................................................... 7

*Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993) ......................................................... 9

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118
    (S.D.N.Y. May 8, 2007).......................................................................................... 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....................................................................... 1, 6

*Hernandez v. NJK Contractors, Inc.*, No. 09-cv-4812 (RER), 2015 WL 5178119
    (E.D.N.Y. Sept. 3, 2015) (Reyes, M.J.) ..................................................................... 15

*J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338 (D. Conn. 1981)................................. 18

*Kim v. Kung Gang, Inc.*, No. 12-cv-6344 (MHD), 2014 WL 2514705
    (S.D.N.Y. June 2, 2014).......................................................................................... 16

*Kindle v. Dejana*, 308 F. Supp. 3d 698 (E.D.N.Y. 2018) (Feuerstein, D.J.) .............................. 13

*Kuzma v. I.R.S.*, 821 F.2d 930 (2d Cir. 1987) ....................................................................... 17

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998).................................................... 12

*Li Rong Gao v. Perfect Team Corp.*, No. 10-cv-1637 (ENV)(CLP), 2014 WL 2465589
    (E.D.N.Y. May 30, 2014) (Vitaliano, D.J.) ................................................................ 18

*Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994)............................................................. 2

*Mawere v. Citco Fund Services (USA) Inc.*, No. 09-cv-1342 (BSJ)(DF), 2011 WL 6779319,
    *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011)...... 13

*Mikhlyn v. Bove*, No. 08-cv-03367 (ARR)(RER), 2011 WL 4529619 (E.D.N.Y. Aug. 3, 2011)
    (Reyes, M.J.), *report and recommendation adopted,* No. 08-cv-03367 (ARR)(RER), 2011
    WL 4529613 (E.D.N.Y. Sept. 28, 2011) (Ross, D.J.)................................................... 8

*Nat'l Distillers Prod. Co., LLC v. Refreshment Brands, Inc.*, 00-cv-8418 (NRB), 2002 WL
    1766548 (S.D.N.Y. July 30, 2002) .......................................................................... 17

*Nautilus Neurosciences v. Fares*, No. 13-cv-1078 (SAS), 2014 WL 1492481
(S.D.N.Y. Apr. 6, 2014)..........................................................................................16

*On Time Aviation, Inc. v. Bombardier Capital, Inc.,* 354 F. App'x 448 (2d Cir.2009)..................8

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017)....................................................5, 9

*Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS)(SIL), 2015 WL 7734100, at *3
(E.D.N.Y. Nov. 30, 2015) (Seybert, D.J.), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d
547 (2d Cir. 2017).......................................................................... 10, 12, 13, 16

*Restivo v. Nassau Cty.*, No. 06-CV-6720 (JS)(SIL), 2017 WL 3727366 (E.D.N.Y. Aug. 28, 2017)
(Seybert, D.J.) ....................................................................................................16

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2010 WL 3992215
(W.D.N.Y. Oct. 12, 2010)....................................................................................8

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) .......................................13

*Sajvin v. Singh Farm Corp.*, 17 Civ. 4032 (AMD)(RER), 2018 WL 4214335
(E.D.N.Y. Aug. 13, 2018) (Reyes, M.J.), *report and recommendation adopted,* 2018 WL
4211300 (E.D.N.Y. Sept. 4, 2018) (Donnelly, D.J.)...................................... 15, 17

*Short v. Manhattan Apartments, Inc.*, No. 11–cv–5989 (SC), 2013 WL 2477266
(S.D.N.Y. Jun. 10, 2013) ......................................................................................17

*Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009)...............................6, 7, 9

*Singh v. Zoria Hous. LLC*, No. 16-cv-2901 (SJ)(RER), 2017 WL 6947717
(E.D.N.Y. Nov. 17, 2017) (Reyes, M.J.), *report and recommendation adopted*, No. 16-
cv-2901 (SJ)(RER), 2018 WL 437492 (E.D.N.Y. Jan. 16, 2018) (Ross, D.J.) ...............15

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41 (2d Cir. 2012)...................................6

*U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. CV 10-4819, 2015 WL 1293019
(E.D.N.Y. Mar. 19, 2015) (Tomlinson, M.J) ...................................................13

*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2d Cir. 1995)....5

*Weather v. City of Mount Vernon*, No. 08-cv-00192 (RPP), 2011 WL 2119689
(S.D.N.Y. May 27, 2011)......................................................................................16

*Weyant v. Okst*, 198 F.3d 311 (2d Cir. 1999) ..............................................................5

*Zahrey v. City of New York*, No. 98-cv-4546 (DCP)(JCF) (S.D.N.Y. Jun. 8, 2010) .................... 13

**<u>Statutes</u>**

28 U.S.C. 1391(b)(1) ................................................................................................... 17

**<u>Rules</u>**

Federal Rule of Civil Procedure 37 ............................................................................. 7

## INTRODUCTION

Plaintiff respectfully submits this memorandum in support of his application for fees and costs awarded by this Court in its Memorandum and Order dated October 11, 2017, and affirmed by the District Court on June 28, 2018.  The facts are set forth in the affirmation of plaintiff's counsel, Joel B. Rudin.  Plaintiff also relies on the supporting Declaration of Nick Brustin, a name partner in the leading civil rights firm, Neufeld Scheck & Brustin ("NSB").

## ARGUMENT

**PLAINTIFF'S FEE REQUEST, INCLUDING THE TIME SPENT AND HOURLY RATES, IS REASONABLE, PARTICULARLY BECAUSE DEFENDANTS' MISCONDUCT FORCED PLAINTIFF'S COUNSEL TO SPEND THIS TIME AND ANY DIMINISHMENT OF PLAINTIFF'S FEE REQUEST, BASED UPON THE 'FORUM' RULE OR OTHERWISE, WOULD REDUCE THE SANCTION'S DETERRENCE VALUE**

I.   **The Hours Being Billed for Defending Plaintiff's Deposition, Handling the Sanctions Motion and the Appeal, and Preparing this Fee Application, Are Reasonable**

In determining a "reasonable fee," a court must apply the lodestar approach, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In reviewing the reasonableness of the hours expended, "the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and citation omitted).  The determination of reasonable hours expended should not be based on what appears necessary in hindsight, but on whether "*at the time the work was performed*, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted)

1

(emphasis added).  *See also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (affirming district court's decision in which, to use the district court's words, it "decline[d] to second guess experienced counsel in deciding whether the hours devoted to research [and] drafting were necessary.  To engage in such detailed hour by hour review is to demean counsel's stature as officers of the court and I have no intention of substituting my after-the-fact judgment for that of counsel who engaged in whatever research and other activities they felt necessary.").

The total number of hours Plaintiff's attorneys expended in connection with Plaintiff's deposition, the motion for sanctions, and this fee application, is reasonable.  Turning first to the deposition, Plaintiff's principal counsel, Mr. Rudin, relied on his knowledge of the case, for which Plaintiff is not billing, and only billed 3.5 hours for reviewing the file in preparation for his meeting with his client.  He, and associate Haran Tae, who also relied on her prior familiarity with the detailed facts of the case, then spent just five hours preparing the client, after which, on the day of the deposition, Mr. Rudin billed an additional .4 hours for preparation.  Mr. Rudin and Ms. Tae then billed 6.8 hours each for defending the deposition itself (but did not bill for travel time).  The time claimed related to the deposition is thus very modest and should not be reduced.

As for the litigation relating to obtaining the police audiotape, including the sanctions motion and appeal, the facts are more involved, but the time spent was just as reasonable.  First, Plaintiff's counsel is not asking to be compensated for the great deal of time they spent, over many months, trying to get defense counsel to produce the audiotape, including numerous emails, telephone conversations, letters to the court, and verbal applications in court, nor for the time spent questioning police witnesses about the possible existence of such a tape until, at the final deposition in the case, its definite existence was revealed and, after several additional

2

requests to the defense and an order from the court, the City finally produced it.  Our fee application begins following our receipt of the tape and our preparation for seeking sanctions.

In that regard, counsel of course listened to the tape, digested it, reviewed it with Plaintiff, compared its content to the other material in the case, including police reports, Plaintiff's deposition transcript, and the transcript of the other witnesses or defendants, researched the law relating to sanctions, and then drafted a letter regarding sanctions to Judge Matsumoto in preparation for a pre-motion conference with her (which the Defendants had scheduled because of their claimed intent to file a summary judgment motion).  An extremely detailed and painstaking review of the deposition transcripts and document discovery was necessary in order to demonstrate the effect the non-disclosure of the IAB audiotape had on the development of discovery in the case, particularly the questioning and the answers during Plaintiff's, and the police defendants', depositions.  As our submitted time records reflect, the majority of this work was performed by Haran Tae, an associate, and Terri Rosenblatt, Mr. Rudin's junior partner; Mr. Rudin's time at this stage was primarily spent in a supervisory role.

Following the April 12, 2017 conference and defense counsel Ashanti's refusal to consent to any sanction, Ms. Rosenblatt and Ms. Tae assembled the motion, which necessarily had to be very detailed in showing the impact of Defendants' discovery violation on Plaintiff's case, including Plaintiff's own deposition and his counsel's ability to fully and accurately develop the facts during the depositions of the police defendants.  An affidavit of counsel had to be drafted, supported by numerous exhibits culled from the discovery materials, and it had to be supported by a memorandum of law based upon counsel's case research.  Again, Mr. Rudin's time was limited to supervising and editing, and the motion papers went through several drafts, a process that would be followed by any quality law firm.  Counsel then reviewed Defendants'

3

response, conducted additional factual and legal research in reaction to the defense submission, and prepared a reply.  The number of hours for preparing such an important, factually and legally complex motion, reviewing the response, and preparing the reply papers, totaling 85.8 hours, only 7.9 hours of which were spent by Mr. Rudin, is extremely modest, and represents an efficient and lean operation.

When this court's decision was received in October 2017, counsel reviewed it, then began researching the law and drafting a fee application.  However, counsel did not complete or file it, as defendants filed a formal, lengthy appeal to the district court, in the form of a motion to vacate, elaborating on old, and proffering some new, arguments.  Plaintiff's counsel was forced, by Defendants' decision to file a largely frivolous appeal that ultimately was completely rejected by Judge Matsumoto, to spend a great deal of time preparing opposition papers.

This effort was conducted almost entirely by Ms. Tae, joined by new associate Jacob Loup and paralegal Partha Sharma, Ms. Rosenblatt having left the firm.  Mr. Loup, in particular, had to review the prior motion papers and materials in the case file to bring himself up to date on the case, but we have not billed for most of that time, just his time researching specific legal issues relevant to the defense appeal and drafting portions of Plaintiff's opposition papers.  Ms. Tae and Mr. Rudin had to review the prior submissions, case law, and factual materials so she could draft her sections of the Plaintiff's memorandum of law and Mr. Rudin could edit it.  In addition, Mr. Rudin had to review his own email correspondence with Mr. Ashanti to correct various misstatements of the facts that Mr. Ashanti had made.  Finally, the complexity of the factual and legal issues necessitated a careful editing process involving several drafts, with some of the editing being done by Mr. Loup in light of suggestions by Mr. Rudin, and other line editing done by Mr. Rudin to make sure the papers were as clear and as concise as possible.

Again, any quality law firm would go through this process.  Plaintiff's counsel reviewed Defendants' reply.  Mr. Rudin's involvement in all this was somewhat greater than previously because Ms. Rosenblatt had left the firm.  The total number of attorney hours spent on the appeal is 94.3, again, a reasonable amount of time to handle an "appeal" in a matter that required not just defending the magistrate-judge's recommendation but also responding to new factual and legal arguments made by the defense.

Plaintiff is also entitled to compensation for the fees incurred in preparing his fee application.  *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995).  Preparing this fee application required reviewing the sanctions decision, researching and reviewing the applicable law, reviewing time records and eliminating time spent on other tasks, redacting the records to omit confidential or privileged information, tallying the fees and costs, and drafting the Affirmation of Joel B. Rudin and this Memorandum of Law.  This process began prior to the settlement conference, included sending a draft affirmation and email correspondence to new defense counsel, and resumed after the settlement conference was unsuccessful.  Plaintiff's counsel is not billing for preparation for and attendance at the settlement conference itself. Because of Defendants' refusal to pay the fees requested, Plaintiff's counsel has been required to prepare this motion, which includes a detailed affirmation, a supporting Declaration from Mr. Brustin attesting to the reasonableness of the hourly rates requested, and this memorandum of law.  The total number of hours requested (60.8 hours) in connection with the preparation of this motion is reasonable.  *Cf. Restivo v. Hessemann*, 846 F.3d 547, 592 (2d Cir. 2017) (upholding award of $97,132 for preparing fee application).

## II.     The Hourly Rates Sought Are Reasonable

### A.     Plaintiff's Counsel are Entitled to Market Rates for Lawyers of Their Skill, Reputation, and Experience

In determining a reasonable hourly rate, courts consider the "prevailing market rate" for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005). The court undertakes "a case-specific inquiry" that may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (internal quotation marks and citation omitted).

The court may also consider: (1) the experience, reputation, and ability of the attorneys; (2) the rate the attorney actually charges paying clients; (3) previous awards to the attorney seeking fees; and (4) the facts and complexity of the particular case. *See* Hensley, 461 U.S. at 430-31. Indeed, the rate that an attorney actually charges is strong evidence of what the "parties believe is the 'reasonable' fee to be awarded," *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001). As the Second Circuit has made clear, however, in determining attorneys' fees, "the most critical factor" is "the degree of success obtained." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (internal quotation marks omitted).

### B.     The Presumption in Favor of the "Forum" Rule Does Not Apply Because Fees and Costs Were Awarded as Sanctions

Plaintiff's law firm is located in Manhattan, within the Southern District of New York. Counsel is seeking hourly rates that are equivalent to their customary billing rates in criminal and civil cases, less a voluntary reduction. The presumption in favor of the "forum" rule, as laid out in *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009), does not apply here, since this is not an application pursuant to 42 U.S.C. § 1988, but for sanctions under Fed.

6

R. Civ. P. 37.  Thus, as we explain below, as a matter of law, Plaintiff's counsel is entitled to be compensated for their customary hourly rates or lodestar.

*Simmons* was decided in the context of a post-verdict application for attorneys' fees pursuant to the fee-shifting provisions of the ADA, Rehabilitation Act, and New York City Human Rights Law.  In contrast, Plaintiff's attorneys' fees and costs were awarded by this Court as a sanction for Defendants' discovery violations under Fed. R. Civ. P. 37.  Fees awarded as disciplinary sanctions under this rule are fundamentally different from fees awarded at the end of a case under a fee-shifting statute.  The purpose of a fee-shifting statute "is to permit plaintiffs with valid claims to attract effective legal representation and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole."  *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) (internal quotation marks and citation omitted).  The forum rule is thus given significant consideration for fees awarded under a fee-shifting statute because they should be "just high enough to attract competent counsel" and it is presumed that competent counsel within the same venue are available.  *Simmons*, 575 F.3d at 176 (internal quotation marks and citation omitted).

In contrast, "attorney's fees awarded as sanctions are not intended only as compensation of reimbursement for legal services, but also serve to deter abusive litigation practices."  *Ceglia v. Zuckerberg*, No. 10-CV-00569 (RJA)(LGF), 2012 WL 503810, at *6–7 (W.D.N.Y. Feb. 14, 2012); *see also Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir.1994) (acknowledging "principal objective" of sanctions "is not compensation of the victimized party, but rather the deterrence of baseless filings and the curbing of abuses" during the litigation process).  In line with this reasoning, several courts in this Circuit have concluded that the forum rule does not apply to fees awarded as sanctions and

have applied out-of-district rates to better serve the punitive and deterrent purposes of sanctions. *See, e.g.*, *Ceglia*, 2012 WL 503810, at *4 (using out-of-district rates to determine fee award under Rule 37); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (same).  Significantly, in *On Time Aviation, Inc. v. Bombardier Capital, Inc.,* 354 F. App'x 448, 452 (2d Cir.2009), the Second Circuit upheld the district court's use of out-of-district hourly rates to calculate attorney's fees awarded as a Rule 11 sanction in order to advance the deterrent purpose of the sanction rather than to shift fees.

This Court's decision in *Mikhlyn v. Bove*, No. 08-cv-03367 (ARR)(RER), 2011 WL 4529619 (E.D.N.Y. Aug. 3, 2011) (Reyes, M.J.), *report and recommendation adopted,* No. 08-cv-03367 (ARR)(RER), 2011 WL 4529613 (E.D.N.Y. Sept. 28, 2011) (Ross, D.J.), supports the proposition that the forum rule does not apply to fees awarded as sanctions.  Much like in this case, counsel for plaintiffs in *Mikhlyn* made a fee application after winning a Rule 37 sanctions motion based upon discovery misconduct committed by the defendants.  In its decision, which was issued *after Simmons*, this Court, while noting that "generally courts look to the rates in the district where they sit," nonetheless used Southern District rates as a basis for comparison in approving, without reduction, the hourly rates requested by Plaintiff's counsel.  The court noted that the rates it was approving were "slightly higher than those routinely awarded in the Eastern District."  *Id.* at *8.  The Court should do the same here.

In this case, given the long and tortured process by which Plaintiff was forced to seek remedies due to the particularly egregious discovery misconduct committed by Defendants, the requested hourly rates should be awarded in order to adequately compensate Plaintiff's counsel, to avoid diminishing the censure intended by this Court's decision and its affirmance by Judge

Matsumoto, and to avoid diminishing its deterrent effect.  These concerns go well beyond the rationale for the *Simmons* rule and demonstrate its inapplicability.

### C. Even if the *Simmons* Test Applies, Plaintiff's Counsel Should Receive Their SDNY Market Rate

Even if this Court were to find that the presumption in favor of the forum rules applies, Plaintiff's counsel is still entitled to out-of-district rates.  Higher out-of-district rates may be awarded when a showing has been made that "a reasonable client would have selected out-of-district counsel because doing so would likely…produce a substantially better net result." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 175 (2d Cir. 2009).  In making this determination, the court will consider "counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise."  *Simmons*, 575 F.3d at 175-76.

The fact that Manhattan attorneys, including this firm, generally charge a higher hourly rate than Brooklyn attorneys for civil rights actions has not deterred potential § 1983 plaintiffs from retaining them.  This speaks to the value that such clients place on these attorneys' skills and experience, relative to the fees they charge.  In fact, a more expensive but more experienced attorney may ultimately end up costing the client less money or achieving a better result for the same total bill.  *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.).

The Second Circuit recently upheld an Eastern District decision that applied the SDNY rate to the lodestar calculation for attorneys' fees in a §1983 case, *see Restivo v. Hessemann*, 846 F.3d 547, 589-91 (2d Cir. 2017), a case litigated by Nick Brustin and his partners, Peter Neufeld and Barry Scheck—all contemporaries of Mr. Rudin who, in Mr. Brustin's Declaration, support the reasonableness of Mr. Rudin's request for himself and his staff to be compensated at

9

comparable rates.  In applying the SDNY rate, the district court in that case considered, amongst other factors, the quality of the attorneys' performance, the attorneys' expertise and success in litigating § 1983 suits, and the likelihood that attorneys with primary offices in the Eastern District would not obtain comparable success in such a § 1983 suit.  *See Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (Seybert, D.J.), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017).

These factors are present here as well.  Plaintiff's counsel has particular expertise in litigating § 1983 cases involving misconduct by law enforcement officials, including the police. This is a difficult, complicated, highly specialized area of the law.  It requires knowledge of police practices, criminal procedure, and the Penal Law—all necessary to understand and to evaluate the facts, potential claims, and likelihood of success—as well as knowledge of applicable state torts and potential federal claims.  In marshaling and utilizing the facts, counsel must understand subtle issues relating to the elements of each potential state or federal claim as well as difficult defenses such as causation and qualified immunity.  Counsel must understand how to develop damages and to evaluate and pursue settlement.  And finally, counsel must have the resources to see the case through given the City's history of fighting against and prolonging discovery, moving to dismiss, and moving for summary judgment.  Plaintiff's law firm has had remarkable success in such matters, has developed an excellent reputation in this specialized area, and has the staff and the experience to overcome typical tactics and defenses of the opposing parties.  There are no Brooklyn law firms regularly handling civil rights cases with similar track records, reputations, and resources to litigate a case such as this as effectively.

While the issues in this case may not be as complex as in wrongful conviction cases involving *Monell* liability such as *Restivo* and similar such cases handled by Plaintiff's counsel,

the Defendants have vigorously contested liability, resisted and delayed discovery, and tried to wear down Plaintiff and his counsel.  Such tactics would likely have succeeded against a less experienced, less able, less determined, smaller firm.  The expertise of Plaintiff's counsel in this specific area of the law is particularly important where Defendants have again indicated they will move for summary judgment, and counsel will have to litigate complicated and evolving issues of liability, causation, qualified immunity, and damages.  Counsel's success in developing the facts, in finally forcing defendants to produce the IAB audiotape, and in litigating the sanctions motion vindicates Plaintiff's judgment in retaining them to work with local Brooklyn counsel in a joint representation.  Indeed, counsel's success in connection with the sanctions motion, which is the effort for which fees are being awarded, demonstrates that Plaintiff's decision to hire Manhattan counsel *did* lead to a "substantially better net result," and Plaintiff's counsel should thus be compensated (at least with respect to the sanctions motion) according to his usual rates in such matters.

In determining the hourly rate, the Court should also take into consideration the amount of risk taken on by Plaintiff's counsel in representing this client.  At the beginning, this appeared to be a difficult case where Plaintiff's word alone would be pitted against that of numerous police officers.  As in all civil rights cases, Plaintiff's counsel is retained on a contingency basis and has "invested a significant amount of time and energy without a guarantee of compensation in a case that was vigorously defended.  Their willingness to take such a risk on behalf of a plaintiff in a civil rights case should be acknowledged."  *Germain v. Cty. of Suffolk*, 672 F. Supp. 2d 319, 324 (E.D.N.Y. 2009) (Spatt, D.J.).

Finally, the court should consider, as explained in Mr. Rudin's Affirmation, that a Manhattan law firm such as this has a much higher overhead than a firm located in Brooklyn.

*See Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) (taking into account firm's relative overhead costs in determining hourly rate).

### D.     The Hourly Rates Sought are Reasonable

Plaintiff's counsel seeks hourly rates based upon current billing rates, as it is well-established that current billing rates, rather than historical rates, should be applied.  *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

### i.     Joel B. Rudin

The rate requested for Mr. Rudin—$700 an hour—is reasonable.  This is reduced from the $750 per hour rate that he charges civil and criminal clients.  As set forth in Mr. Rudin's Affirmation, he is a senior attorney with 40 years of experience.  He has particular expertise in and renown for successfully litigating § 1983 lawsuits involving police and prosecutorial misconduct.  He has a background in criminal defense that is uniquely valuable for the handling of civil rights cases.  He has a unique skill set, having tried numerous criminal cases in state and federal court but also having had valuable appellate experience.  The appellate experiences include briefing and arguing two cases in the United States Supreme Court, many cases in the federal circuit courts and the New York Court of Appeals and Appellate Division, and numerous successful collateral attacks in state and federal courts attacking criminal convictions.  He has written extensively and spoken publicly at law schools and other public forums about police and prosecutorial accountability and is regularly quoted as an expert in the news media.  Mr. Brustin, in his Declaration, writes that Mr. Rudin is respected as a peer of his partners Barry Scheck and Peter Neufeld and it would be reasonable to award him a rate comparable to what Messrs. Scheck and Neufeld were awarded by Judge Seybert in the *Restivo* case.

Indeed, civil rights attorneys with comparable or less experience and reputation have been awarded fees in the range of $600-700 per hour in the Eastern and Southern Districts in civil rights cases. *See, e.g.*, *Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (Seybert, D.J.) (awarding $700 hourly rate); *Abdell v. City of New York*, No. 05-cv-8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (awarding $650 hourly rate); *Mawere v. Citco Fund Services (USA) Inc.*, No. 09-cv-1342 (BSJ)(DF), 2011 WL 6779319, *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011) (awarding $650 hourly rate); *Alicea v. City of New York*, No. 13-cv-7073 (JGK), 2017 WL 3412100 (S.D.N.Y. Aug. 8, 2017) (awarding $625 hourly rate); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (awarding $625 hourly rate); *Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. Jun. 16, 2016) (awarding $600 hourly rate); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 hourly rate). *See also, e.g.*, *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853 (PGG), 2011 WL 1002439, at *5 (S.D.N.Y. Mar. 16, 2011) (approving $761 for senior partner in arbitration matter); *U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. CV 10-4819, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015) (Tomlinson, M.J) (awarding $600 for attorney in False Claims Act action); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 711 (E.D.N.Y. 2018) (Feuerstein, D.J.) (awarding $600 to attorney in ERISA lawsuit).  The rates awarded in most of these cases have a higher present value.

In addition to Mr. Rudin's experience, expertise, and reputation, his requested rate of $700 is also supported by a litigated decision from eight years ago awarding him $575 per hour in a prior case that involved police misconduct, *Zahrey v. City of New York*, No. 98-cv-4546 (DCP)(JCF) (S.D.N.Y. Jun. 8, 2010).  Magistrate Judge Francis, in a lengthy, carefully-reasoned

decision, awarded Mr. Rudin this rate at a time when Mr. Rudin's usual hourly fee was $625, or

$125 less than it is now.  *See* Ex. C to Rudin Affirmation.  Taking into account the additional

expertise he has acquired since 2010, as well as the average annual inflation rate of 3.22% and

the increase in his actual billing rate, Mr. Rudin's requested hourly rate here is consistent with

the award in *Zahrey*.

While Plaintiff has been unable to find on Westlaw any § 1983 fee applications that this

Court has ruled on, Plaintiff notes that this Court recently held that $600 per hour was reasonable

and was "well within the range" of awards in the Eastern District.  In *Broadcast Music, Inc. v.*

*The Living Room Steak House, Inc.*, No. 14-cv-6298 (FB)(RER), 2016 WL 756567 (E.D.N.Y.

Feb. 26, 2016) (Reyes, M.J.), *report and recommendation adopted sub nom. Broadcast Music,*

*Inc. v. Living Room Steak House, Inc.*, No. 14-cv-6298 (FB)(RER), 2016 WL 1056609

(E.D.N.Y. Mar. 17, 2016) (Block, D.J.), a copyright infringement action, this Court began its

analysis by pointing out that, despite the forum rule, "courts in the Eastern District of New York

often use rates for New York City attorneys awarded in the Southern District of New York as a

basis for comparison." *Id.* at *8, quoting *Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05-CV-

4836, 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007).  It then held that a $600 hourly rate

for a copyright attorney was "well within the range of what courts in this District have

considered reasonable," while citing decisions in the S.D.N.Y. awarding $735 and $650.

*Broadcast*, 2016 WL 756567, at *9.  Significantly, no other qualifications for this attorney were

cited except that he had been a law firm partner.  Given that Mr. Rudin appears to have far more

stature in his own field, the public policy supporting encouraging law firms to handle difficult

civil rights cases, and the inherent difficulty of such cases, Mr. Rudin should be awarded a

higher rate than in *Broadcast Music* even if local Brooklyn rates are used rather than Southern

District rates.  Given that attorneys' fee awards in § 1983 cases have been "increasing over time," *Abdell v. City of New York*, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015), and the *Broadcast Music* decision was in early 2016, nearly three years ago, Mr. Rudin should receive his requested rate, reduced $50 from his customary billing rate, of $700.

Other decisions by this Court, also in non-civil rights cases, do not indicate that a lower rate should be awarded here.  In *Sajvin v. Singh Farm Corp.*, 17 Civ. 4032 (AMD)(RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (Reyes, M.J.), *report and recommendation adopted,* 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018) (Donnelly, D.J.), this Court awarded $500 per hour for an attorney who billed at and requested $600 per hour in a labor law case and who did not have quite the same stature in his field that Mr. Rudin does.  In *Hernandez v. NJK Contractors, Inc.*, No. 09-cv-4812 (RER), 2015 WL 5178119, at *5 (E.D.N.Y. Sept. 3, 2015) (Reyes, M.J.), a Fair Labor Standards Act case, the court noted that a partner with 22 years of experience in that field had requested $525 per hour, but rather than rule on the per-attorney rate, reduced the overall fee request by one-third primarily because of deficiencies in their billing records, including pervasive block billing, overcharges for travel time, and billing for time that was not shown to be relevant to the case.  Finally, in *Singh v. Zoria Hous. LLC*, No. 16-cv-2901 (SJ)(RER), 2017 WL 6947717 (E.D.N.Y. Nov. 17, 2017) (Reyes, M.J.), *report and recommendation adopted*, No. 16-cv-2901 (SJ)(RER), 2018 WL 437492 (E.D.N.Y. Jan. 16, 2018) (Ross, D.J.), this Court recommended a rate, also in an FLSA case, of $350 for a solo practitioner who, although he had 37 years of litigation experience, had relatively little experience in the type of case at issue, had requested just $400 per hour, and where the issues in the case were relatively simple.  Meanwhile, above, we have cited decisions by other Eastern District judges awarding $600 to $700 per hour.

### ii.     Terri Rosenblatt

The $450 hourly rate sought for Ms. Rosenblatt, a junior partner in the firm with a decade of experience in the relevant fields of criminal defense and civil rights litigation, is also reasonable.  *See, e.g.*, *Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (Seybert, D.J.) (awarding $500 hourly rate for junior partners); *see also Demonchaux v. Unitedhealthcare Oxford*, No. 10-cv-4491 (DAB), 2014 WL 1273772, at *7 (S.D.N.Y. March 27, 2014) (approving $500 per hour for senior associates); *Kim v. Kung Gang, Inc.*, No. 12-cv-6344 (MHD), 2014 WL 2514705 at *2 (S.D.N.Y. June 2, 2014) (awarding $450 to lawyer with 7 or 8 years of experience); *Weather v. City of Mount Vernon*, No. 08-cv-00192 (RPP), 2011 WL 2119689 (S.D.N.Y. May 27, 2011) (awarding $400 per hour to senior associate).  As with Mr. Rudin, Ms. Rosenblatt has a unique skill set combining criminal law and civil rights experience both at the trial and appellate levels.

### iii.     Associates

The $275-300 hourly rates Plaintiff seeks for associates Ms. Tae and Mr. Loup, who have 3-4 years of experience, are also reasonable and supported by precedent.  *See, e.g.*, *Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS)(SIL), 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015) (Seybert, D.J.) (awarding $300 for third-year associate and $250 for first year associate); *Nautilus Neurosciences v. Fares*, No. 13-cv-1078 (SAS), 2014 WL 1492481, at *2-3 (S.D.N.Y. Apr. 6, 2014) (approving hourly rate of $337.50 for third-year associate); *Kim v. Kung Gang, Inc.*, No. 12-cv-6344 (MHD), 2014 WL 2514705, at *2 (S.D.N.Y. June 2, 2014) (awarding $300 for third-year associate).

Finally, the $125 hourly rate sought for the firm's paralegal, Partha Sharma, is also reasonable. *See, e.g., Restivo v. Nassau Cty.*, No. 06-CV-6720 (JS)(SIL), 2017 WL 3727366, at *3-*4 (E.D.N.Y. Aug. 28, 2017) (Seybert, D.J.) (awarding $125 for paralegals); *Short v.*

*Manhattan Apartments, Inc.*, No. 11–cv–5989 (SC), 2013 WL 2477266, at *3 (S.D.N.Y. Jun. 10, 2013) (awarding $150 for paralegals); *see also Nat'l Distillers Prod. Co., LLC v. Refreshment Brands, Inc.*, 00-cv-8418 (NRB), 2002 WL 1766548, at *2 n.5 (S.D.N.Y. July 30, 2002) (approving award of $170 for paralegals).

In sum, the requested hourly rates are reasonable considering the prevailing market rates and the skill, experience, and reputations of the attorneys.  As this Court has noted, attorneys should not be penalized merely for bringing a case in the Eastern District, where those "same lawyers can bring a similar case 2.0 miles away and receive higher hourly rates." *Sajvin v. Singh Farm Corp.*, No. 17-cv-04032 (AMD)(RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (Reyes, M.J.), *report and recommendation adopted,* No. 17-cv-4032 (AMD)(RER), 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018) (Donnelly, D.J.).[1]

### III.    Plaintiff is also Entitled to Reasonable Costs

Pursuant to this Court's order dated October 11, 2017, Defendants must pay Plaintiff's costs incurred in connection with Plaintiff's deposition and motion for sanctions.  To prepare the sanctions motion, Plaintiff ordered transcripts of various discovery-related court conferences and incurred FedEx fees.  These expenses were necessary and reasonable, and are the types of expenses routinely recoverable through fee awards.  *See, e.g., Kuzma v. I.R.S.*, 821 F.2d 930, 933–34 (2d Cir. 1987); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 211 (E.D.N.Y. 2007) (Vitaliano, D.J.).  Plaintiff is not billing for copying, telephone, or travel expenses (Plaintiff resides in New Jersey), or Westlaw database fees for legal research.

---

[1] This is all the more true given that Plaintiff may well have been able to bring his action in the Southern District of New York because the New York City Police Department's is headquartered in Manhattan. *See* 28 U.S.C. 1391(b)(1) (civil action may brought in a judicial district in which any defendant resides).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court order Defendants

to pay Plaintiff's attorneys' fees and costs in the total amount of $108,000.71, and that such

amount be ordered paid within 10 days of this Court's order. *See, e.g.*, *Li Rong Gao v. Perfect*

*Team Corp.*, No. 10-cv-1637 (ENV)(CLP), 2014 WL 2465589, at *6 (E.D.N.Y. May 30, 2014)

(Vitaliano, D.J.) (ordering attorneys' fees and costs under Rule 37 be paid within 10 days);

*Auscape Int'l v. Nat'l Geographic Soc.*,  No. 02-cv-6441 (LAK)(HBP), 2003 WL 21976400, at

*8 (S.D.N.Y. Aug. 19, 2003) (same); *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338,

360 (D. Conn. 1981) (same).

Respectfully submitted,

LAW OFFICES OF JOEL B. RUDIN, P.C.
By:    Joel B. Rudin
         Haran Tae
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
212-752-7600
jbrudin@rudinlaw.com

*Counsel for Plaintiff*

Dated: October 12, 2018
         New York, New York

18